WILLIAM H. RITTLER *vs.* EMELIE SMITH, Administratrix of VICTOR SMITH.

*Insurance by a Creditor of the Life of his Debtor—Insurable interest—Assignment of Life policy by the Assured—Disproportion between Debt and Amount of Policy.*

A creditor took out certificates of insurance amounting to $6500 on the life of his debtor, who owed him about $1000. These insurances were effected in mutual aid associations where mortuary dues were paid by assessments, and where the sum to be realized depended upon the number and solvency of the members. The creditor on the death of his debtor, collected from these insurances the sum of $2124.82, and after deducting the debt and interest due, the premiums he had paid, and the costs and expenses of effecting the insurances, there remained a balance of $474.53. HELD:

That the creditor was entitled to this balance.

A creditor has an insurable interest in the life of his debtor; and if the contract of insurance be valid at the time it is entered into, the creditor may recover on the policy, notwithstanding that his interest has ceased during the life of his debtor.

The assured may make a valid assignment of a policy on his own life, to one who has no insurable interest therein, the policy being but a *chose in action* for the payment of money.

There may be such a gross disproportion between the debt and the amount of the policy as to stamp the transaction with want of good faith, and as a mere speculation or wager; but the question of such disparity should be left to be determined by the circumstances of the particular case.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, YELLOTT, STONE, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*J. Wilson Leakin,* and *R. R. Battee,* for the appellant.

*William A. Hammond,* for the appellee.

MILLER, J., delivered the opinion of the Court.

In June, 1886, Victor Smith was indebted to William H. Rittler in the sum of about $1000, and Smith being insolvent, Rittler took out certificates of insurance on Smith's life, in four several mutual aid associations, aggregating on their face the sum of $6500. These certificates were all in favor of Rittler and he paid all the premiums or assessments thereunder. Smith died in March, 1887, and Rittler collected from these insurances the sum of $2124.82, which appears to have been all that could have been collected, according to the terms of the certificates, and the financial condition of the associations. Deducting from this sum the debt and interest due Rittler, the premiums he had paid, and the costs and expenses of effecting the insurances, there remained a balance of $474.53, as of the 1st of June, 1887. On the third of October following, letters of administration on Smith's estate were granted to an administratrix, who thereupon filed her bill claiming this balance as belonging to the estate of the decedent. In his answer Rittler denied this claim, and insisted that the money belonged to him. The case was heard on bill and answer, and the Court below decreed in favor of the complainant. From this decree Rittler has appealed.

The question as thus presented is an interesting one, is of first impression in this State, and has been very ably argued. On the part of the appellant it

is contended that where a creditor with his own money and for his own account, effects and keeps up an insurance on the life of his debtor, the whole of the proceeds belong to him unless it appears that he has gone into it for the mere purpose of speculation, which in this case is expressly negatived by the answer, the averments of which must be taken as true, the case having been heard on bill and answer. On the other hand, counsel for the appellee contend, that where the creditor receives more than enough to reimburse him for his debt and outlay, with interest, he will, as to the balance be regarded as a trustee for the personal representative of the debtor; that the law says to the creditor in such a case, "you may protect yourself; you may by insuring your debtor's life secure your debt with all outlay and expenses; you may make yourself whole, but you shall not speculate on his death; you shall not have a greater direct pecuniary interest in his death than you may have in his life."

There have been numerous decisions upon this subject, some of which are conflicting. On many points however bearing upon the question, there is a general concurrence of judicial opinion and authority. For instance, it is generally held by the Courts in this country that one who has no insurable interest in the life of another cannot insure that life. Such insurances are considered gambling contracts, and for that reason void at common law apart from any statute forbidding them. In England they were held valid at common law, but were prohibited as introducing a "mischievous kind of gaming," by the first section of *Statute* 14 *Geo.* III, *ch.* 48. The effect of this section, as construed by the English Courts, is to make the law of England, by Act of Parliament, the same as it has been held to be by the Courts in this country without such an Act. In some American cases they have been de-

nounced as void not simply because they tend to promote gambling, but because they are incentives to crime. The force of this latter suggestion has been, and may well be, doubted. It means that one not related or connected by consanguinity or marriage, who may have a direct pecuniary interest in the speedy death of another, will thereby be tempted to murder him, though he knows that hanging is the penalty for such a crime. This doctrine carried to its logical result has a far-reaching effect. It strikes down every legacy to a stranger which may become known to the legatee, as is frequently the case, before the death of the testator. It makes void every similar limitation in remainder after the death of a life tenant. Every like conveyance of property in consideration that the grantee shall support the grantor during his life, falls under the same condemnation. Yet we know of no case in which a Court has declared such testamentary dispositions or conveyances to be void on this ground. Other instances in which the same result would follow from the application of this doctrine, could be readily suggested, but we need not pursue the subject further.

All the authorities also concur in holding that a creditor has an insurable interest in the life of his debtor. In England it was at one time held that though the creditor had an insurable interest at the time the policy was issued, yet if his debt was paid in the lifetime of his debtor, and his interest had therefore ceased, he could not recover, because the contract of life insurance like insurances of property, was one of indemnity. But this doctrine has long since been repudiated, and the settled rule in England now is, that a life insurance in no way resembles a contract of indemnity, but is an agreement to pay a certain sum of money upon the death of the person insured, in consideration of the due payment of a certain fixed annual sum or

premium, during his life, and hence if the contract be valid at the time it was entered into, notwithstanding the fact that the interest of the creditor has ceased during the life of his debtor, he may still recover on the policy, though the result may be that he will be twice paid for his debt, once by his debtor and again by recovery on the policy. *Dalby vs. Life Ins. Co.,* 15 *Com. Bench,* 365. The same construction of the contract has been approved and adopted by this Court. *Emerick vs. Coakley, et al.,* 35 *Md.,* 193; *Whiting vs. Independent Mutual Ins. Co.,* 15 *Md.,* 326.

· In support of the view taken by the appellee's counsel, cases have been cited in which it has been held that the assignee of a life policy, who has no insurable interest in the life, stands in the same position as if he had originally taken out the policy for his own benefit. In other words the contention is that the assured himself can make no valid absolute assignment of his policy to one who has no insurable interest in his life. But our own decisions are opposed to this. It is settled law in this State that a life insurance policy is but a *chose in action* for the payment of money, and may be assigned as such under our Act of 1829, ch. 51. *New York Life Ins. Co. vs. Flack,* 3 *Md.,* 341; *Whitridge vs. Barry,* 42 *Md.,* 150. It is quite a common thing for the bond or promissory note of a private individual, to be sold through a broker to a *bona fide* purchaser, for less than its face value; and when the latter takes an assignment of it, without recourse, he becomes its absolute owner, and is not bound to refund to the vendor anything he may recover upon it over and above what he paid for it. So a life policy being a similar *chose in action* may be disposed of and assigned in the same way, provided the assent of the insurer is obtained where it is so stipulated in the instrument. In such case the assignee must of

course keep the policy alive by the due payment of premiums if he wishes to realize any thing from it. Such an assignment is valid in this State if it be a *bona fide* business transaction, and not a mere device to cover a gaming contract. Such is also the English rule. *Ashley vs. Ashley,* 3 *Sim.,* 149. These considerations prevent us from adopting some of the reasoning of the Supreme Court in *Warnock vs. Davis,* 104 *U. S.,* 775. It seems to us, with great deference, that from the facts in that case, the association, which was the assignee, could well be regarded as standing in the same position as if it had taken out the policy in its own name, and having no insurable interest in the life it clearly became a wager policy. The assignment was made the day after the policy was issued in pursuance of an agreement to that effect made the day of its issual. The assignment was evidently a mere device to cover up a gaming transaction. In the preceding case of *Cammack vs. Lewis,* 15 *Wallace,* 643, the debt due the creditor was only $70 and the policy was for $3000. It was taken out by the debtor, who was in bad health at the suggestion of the creditor, and was assigned to him *immediately after* it was made out, he, at the same time, taking a note from his debtor for $3000 confessedly without consideration. In view of these facts the Court well said "it was a sheer wagering policy and probably a fraud on the insurance company. To procure a policy for $3000 to cover a debt of $70 is of itself a mere wager. The disproportion between the real interest of the creditor and the amount to be received by him, deprives it of all pretence to be a *bona fide effort to secure the debt,* and the strength of this proposition is not diminished by the fact that Cammack was only to get $2000, out of the $3000, nor is it weakened by the fact that the policy was taken out in the name of Lewis and assigned by him to Cammack."

It was *"under these circumstances"* that the Court held that Cammack could hold the policy only as security for the debt due him when it was assigned, and such advances as he might afterwards make on account of it.

If such then be the nature of a life insurance contract, and if a *bona fide* assignee for value, though a stranger, may recover and hold the whole amount for his own use, why may not a creditor who in pursuance of a *bona fide* effort to secure payment of his debt, insures the life of his debtor and takes the policy in his own name or for his own benefit, be entitled to hold all he can recover? He is in fact the owner of the policy, takes the risk of the continued solvency of the insurance company, and is obliged to keep the policy alive by paying the annual premiums during the life of the debtor, and the latter is under no obligation to do any thing, and in fact does nothing in this respect. If he pays the debt to his creditor he has only discharged his duty, and what interest has he in the policy, or in what his creditor may recover upon it? In a recent English case it was held that a creditor who had insured the life of his debtor could retain all the sums he had received from the policies, without accounting for them to the representatives of the debtor, unless there was distinct evidence of a contract, to the effect that the creditor had agreed to effect the policy, and that the debtor had agreed to pay the premiums, in which case only, will the policy be held in trust for the debtor. *Bruce vs. Garden, Law Rep.,* 5 *Chancery Appeals,* 32. This is the latest English authority to which we have been referred, and was decided by Lord Chancellor HATHERLEY on appeal. In that case the amount received from the policies by the creditor was nearly twice as much as the debt due him by his debtor.

We agree that there may be such a gross disproportion between the debt and the amount of the policy,

as to stamp the transaction as indicating upon its face want of good faith, and as a mere speculation or wager. The case of *Cammack vs. Lewis* affords an instance of such gross disparity, but no general rule on this subject has as yet been laid down by the Courts, and it is probably better to leave each case to depend on its own circumstances. The disparity between the debt of $1000, and $6500, the aggregate of the sums named in the certificates, is certainly great, but upon examination it is more apparent than real. The answer, which we must take as true, shows *bona fides* on the part of the creditor. The policies were all in in mutual aid associations where mortuary dues are paid by assessments and where of course the sum to be realized depends upon the number and solvency of the members. One of the certificates for $2000 contained a condition that only one-half should be paid if the assured should die within one year from its date, an event which actually occurred. Another expressly provided that he should receive an amount *not exceeding $2000, but according to the members liable to assessment on this certificate,* and from that he received according to its terms only $250. Another of the associations was in financial difficulties and he compromised his claim on a certificate for $1000, and received only $132.82. By taking out these certificates he became liable to be assessed as a member, and during the short time they were running (from June to the following March) he paid in this shape and in premiums the sum of $351.75. In view of the character of these certificates and of the associations by which they were issued, we cannot say the disproportion between the debt and the real amount and value of the insurances is so great in this case as to warrant a sentence of condemnation against the transaction as being a mere speculation or wager on the life of the debtor.

Merrill, *et al. vs.* Board of County School Comm'rs of Garrett Co.

Without attempting a review of all the numerous decisions on this subject we simply refer, in support of our views to the following cases, in addition to those already cited: *Mutual Life Ins. Co., vs. Allen,* 138 *Mass.,* 24; *Clark vs. Allen,* 11 *R. I.,* 439; *Olmsted vs. Keyes, et al.,* 85 *N. Y.,* 593; *Amick vs. Butler,* 111 *Ind.,* 578; *Johnson, et al. vs. Van Epps,* 110 *Ill.,* 562; *Appeal of Corson,* 113 *Penn.,* 438. And among the text writers to *Bliss on Life Ins.,* sec. 30, and *Life Insurance, Law of Assignments, (Hine & Nichols,)* 81, 82. On the whole we are of opinion the weight of reason as well as of authority sustains the appellant's claim. We shall therefore reverse the decree appealed from and dismiss the appellee's bill.

> *Decree reversed, and*
> *bill dismissed.*

(Decided 21st February, 1889.)