GARRARD STRODE, Public Administrator of JOHN STOKES, Deceased, Respondent, v. MEYER BROTHERS DRUG COMPANY, Appellant.

St. Louis Court of Appeals, April 14, 1903.

1. **Insurance, Life:** CREDITOR AS BENEFICIARY: DEBTOR TO HAVE RESIDUE. In an action by an administrator against the creditor of the deceased for an accounting of the proceeds of a life insurance policy, evidence examined, and *held* sufficient to show that the policy was taken out by the deceased debtor to secure his creditor, and not by the creditor for its own benefit.

2. ———: BENEFICIARY TO EXTENT OF HIS DEBT: TRUSTEE. The creditor, whether he be named as payee of the policy when it is issued or becomes the payee afterwards by assignment, acquires the status of beneficiary so far as is necessary to make him whole and no further, and as to the remainder of the insurance money, he stands as trustee for the estate of the insured.

3. ———: EXCESS OF POLICY, ABOVE CREDITOR'S DEBT: POLICY NOT VOID AS A WAGER. The fact that a creditor has insured his debtor's life, with the latter's consent, in excess of the indebtedness, does not make the policy void as a wager contract; but the creditor is bound to account to the debtor's estate as trustee for the excess.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED.

*McKeighan & Watts* for appellant.

(1)   The evidence showed that the policy of insurance set out in plaintiff's petition was taken out in consideration of said defendant's agreement to release and discharge the deceased (Stokes) from any further liability on account of the indebtedness of said Stokes to defendant, and, therefore, the said policy of insurance became the absolute and unqualified property of the defendant, in which said deceased (Stokes) and his estate had no present interest, nor any future interest except as to the $50 stipulated in the policy to be paid to the administrator of Stokes.   Amick v. Butler, Admr. 111 Ind. 578, and cases therein cited, especially Freme v. Brade, 2 De Gex & J. 582; Ulrich v. Reinoehl, 143 Pa. St. 238 (13 L. R. A. 433); Rittler v. Smith, Admx., 70 Md. 261 (2 L. R. A. 844); Grant v. Klein, 115 Pa. St. 618; Clawson's Appeal, 113 Pa. St. 43; Bank v. Loh, 104 Ga. 446 (separate opinion of Little, J., 383).   (2)   If the contract in controversy was a wagering contract then it was void, and the plaintiff can not maintain his action.   In wagering, as well as all other illegal and immoral contracts, so long as they are executory, the courts will not enforce them in law or equity, or aid the parties in distribution of proceeds realized from such collection, and where the contract has been executed, by the payment over the money to one of the wagering parties by the stakeholder (in this case the insurance company), it is too late for the other wagering party to repent and sue for the recovery back of the money paid over on the executed contract.   Bishop on Contracts, secs. 624-627; Hickerson v. Benson & Workman, 8 Mo. 14; Hayden v. Little, 35 Mo. 418; Peltz v. Long, 40 Mo. 542; Lawson on Contracts (Ed. 1893), sec. 54.

*Johnson, Houts, Marlatt & Hawes* for respondent.

(1)   A contract by which a creditor effects insur-

ance upon the life of his debtor is one of indemnity only. A creditor's insurable interest in the life of his debtor is limited to the amount of the indebtedness secured. If the contract contemplates more than security for the indebtedness, it is a wagering contract and unlawful. Bank v. Loh, 44 L. R. A. 372; 2 May on Insurance (3 Ed.), sec. 459a; 1 Bacon on Benefit Societies and Life Insurance (2 Ed.), sec. 250a; 13 Am. and Eng. Ency. of Law, pp. 648-653; Insurance Co. v. O'Brien, 92 Mich. 584; Wideman v. Hubbard, 88 Fed. 806; Tate v. Building Ass'n, 97 Va. 74; Baird v. Sharp, 100 Ky. 606; Bayse v. Adams, 84 Ky. 368; Goldbaum v. Blum, 79 Tex. 638; Schonfield v. Turner, 75 Tex. 324; Rittler v. Smith, 70 Md. 261; Helmetag v. Miller, 76 Ala. 183; Warnock v. Davis, 104 U. S. 775; Stephens v. Warren, 101 Mass. 564. (2) But even though the court should find that the agreement in this case contemplated that Meyer Bros. Drug Company should retain the entire proceeds of the policy, and thereby construe the contract as a wagering contract and unlawful, yet in such cases the maxim *in pari delicto* is not applied, and the court will decree an accounting from the creditor for all of the proceeds over and above its debt, expenses and interest. Helmetag v. Miller, 76 Ala. 183; Cammack v. Lewis, 15 Wallace, 643; Warnock v. Davis, 104 U. S. 775; Wideman v. Hubbard, 88 Fed. 806; Stephens v. Warren, 101 Mass. 564; Tate v. Building Ass'n, 97 Va. 74; Baird v. Sharp, 100 Ky. 606; Basye v. Adams, 81 Ky. 368; Goldbaum v. Blum, 79 Tex. 638; Schonfield v. Turner, 75 Tex. 324; Rittler v. Smith, 70 Md. 261; 2 May on Insurance (3 Ed.), sec. 459a. (3) It is immaterial that the policy in this case was made payable directly to the creditor. The same rules apply whether the policy be made payable directly to the creditor or to the debtor and assigned by him to the creditor. Bank v. Loh, 44 L. R. A. 373.

GOODE, J.—In the year 1885, John M. Stokes, now deceased, was a member of the firm of Jones & Stokes, which was engaged in the drug business at Sumner, Illinois. At that time said firm owed Meyer Brothers Drug Company $111, or thereabouts, for merchandise. October 12, 1897, Stokes made a written application to the Fidelity Mutual Life Insurance Company of Philadelphia, for a policy of insurance in the sum of $5,000 on his life, and a policy was issued by said insurance company in November of that year, by which $50 was to be paid to Stokes' administrator or executor at his death, and the remainder of the proceeds to the Meyer Brothers Drug Company. The provision of the policy in regard to the payment of its proceeds conformed to a direction contained in Stokes' application, which reads as follows:

"For whose benefit is the insurance? J. M. Stokes, $50; the balance to Meyer Bros. Drug Company, creditor, or their legal representatives; i. e., $4,950."

The application likewise stated that the money to keep the policy in force would be furnished by the Meyer Brothers Drug Company. Both the policy and the application are attached as exhibits to the agreed statement of facts, which statement need not to be reproduced in full, because many of the facts agreed to are unimportant on this appeal.

At the time Stokes took out the insurance, he was thirty-five years of age and his expectancy of life was thirty-one years. The annual premium was $94.80 and the premiums were paid by the drug company until Stokes' death, which happened February 10, 1900. Thereafter the insurance company paid $4,950 to the Meyer Brothers Drug Company, which kept the entire amount, refusing to pay any of it to the respondent Strode, who is the administrator of Stokes' estate. This suit was brought to compel an accounting by the appellant, the contention of the respondent being that ap-

pellant is only entitled to retain of the insurance money
enough to pay what Stokes owed and the money ex-
pended in keeping the policy alive with interest on those
items.

The agreed statement of facts contains an admis-
sion that the defendant acted in good faith in respect
to the application for the issuance of the policy. At-
tached to the statement as an exhibit, is the account ap-
pellant held against Jones & Stokes, which, as copied
from appellant's ledger, is as follows:

"Jones & Stokes, Sumner, Ill.

| 1885. | 1886. |
|---|---|
| Nov. 9, To Mdse., 60 days . . $22.15 | Jan. 26, by cash . . . . . $10.00 |
| Dec. 24, To Mdse., 60 days . . 16.00 | |
| Dec. To Notes, 15 days . . 40.00 | |
| Dec. To Notes, 30 days . . 42.85 | |
| 1900. | |
| July 19, Interest from date, 8 per cent . . . . . 56.50 | |
| Nov. 4, 1897. This account se- cured by insurance policy on life of Stokes. | |
| (Settled by payment of life insur- ance policy 7–19–1900.) | |

The premiums paid by the drug company amounted
to $299.40.

A letter written by Stokes to the appellant, Decem-
ber 7, 1897, was put in evidence, in which Stokes in-
quired why he was not released from the notes men-
tioned in the account as he had fulfilled his part of the
agreement in reference to the insurance. To this the
drug company replied, December 13th, that it had not
yet received the policy, but when it was received a
letter would be sent to Stokes releasing him from
further prosecution on appellant's claim. Another
letter written by Stokes, and the reply to it, are as
follows:

"Sumner, Ill., Jan. 9, 1898.
"Meyer Brothers Drug Co., St. Louis, Mo.

"Gentlemen: Please inform me as to my insur-
ance policy taken out at West Salem, Ill., in '97, pay-
able to you and my wife, of the Jones & Stokes account.

I am anxious to know if you still hold the policy and I
pass ex.                          Resp.,

"J. M. STOKES, M. D."

"January 13, 1899.

"Mr. J. M. Stokes, Sumner, Ill.

"Dear Sir: We beg to advise that we still hold a
policy on your life, which is in full force, and which is
in the Fidelity Mutual Life Assn. of Philadelphia.   You
passed the examination very well.

"Yours truly,
"MEYER BROS. DRUG CO.,
"By T. G. MEYER."

The agreed statement reserved the right to the ap-
pellant to introduce explanatory evidence as to Jones
& Stokes account; also evidence to show at whose in-
stance the insurance was applied for by Stokes.

It will be observed that on the account against
Jones & Stokes is a notation, of date February 4, 1897,
that the account was secured by an insurance policy on
the life of Stokes, and also another notation dated
July 19, 1900, that the account had been settled by the
payment of the life insurance policy.

In explanation of those notations the Meyer
Brothers Drug Company elicited testimony from its
treasurer and one of its officials (Geo. T. Meyer) who
had charge of its insurance policies, that the latter
made the first notation under a misapprehension in
regard to the ownership of the policy, believing at
the time that it had been deposited as security for
Stokes' indebtedness. Appellant's treasurer, Wall,
was permitted to testify that he instructed Dixon &
Howell, a firm of local insurance agents in St. Louis,
to secure insurance on the life of Stokes; that they
corresponded with Stokes in regard to the matter and
Howell subsequently reported to him. (Wall) what
Stokes said; namely, that he (Stokes) would permit a

policy to be taken on his life provided Meyer Brothers Drug Company would release him from his indebtedness and that Wall directed that a policy be taken out on those terms. An objection was made and saved to the admission of this testimony by the respondent.

Appellant's position is that as a creditor of Stokes it had the right to insure his life for its own benefit and that the agreed facts show that instead of the policy being procured simply to make it safe for what Stokes owed to it, with the balance over of the proceeds payable to his estate, it was in fact taken out with the intention that the appellant should keep it alive by paying premiums and enjoy the entire proceeds, less fifty dollars.

A good answer to this argument, so far as our duty is concerned, is, that the evidence fully warranted a finding by the circuit court that the arrangement between Stokes and the drug company was made for the purpose of securing the former's indebtedness to the latter. The notation on the account goes to prove the transaction was of that nature, and although this notation was said by witnesses to have been a mistake, the circuit court was not bound to believe them. No declaration of law was requested that if the court found the understanding between Stokes and the drug company was to retain all the proceeds of the policy and not merely enough to cover its merchandise account, the judgment should be in its favor. It is true declarations of law are unnecessary and, perhaps, improper when a case is submitted on an agreed statement of facts; but when material facts are left open to proof by testimony, and the evidence about them is contradictory, declarations are both proper and necessary if an appellate court is to pass on controverted legal propositions predicated in reference to the disputed facts. The agreed statement and the exhibits in this case strongly tended to prove this insurance was taken out by Stokes primarily as security for the small sum

he owed the appellant. It seems he was being pressed for payment at that time and took this policy to escape further annoyance. Wall's testimony as to what Howell stated in regard to the correspondence between the firm of Dixon & Howell and Stokes was palpably incompetent, for it was mere hearsay; and with this evidence out of the case there is none to show at whose instance the insurance was procured, except the application signed by Stokes, which shows prima facie that it was at his own. The application on its face bespeaks a transaction between Stokes and the drug company as debtor and creditor, for it contains a direction that most of the proceeds of the policy be paid to Meyer Brothers Drug Company, *creditor,* or its legal representatives.

Aside from all the foregoing considerations, by the law in this State appellant's interest in the policy did not exceed what Stokes owed it plus the amount of premiums it paid and interest, as we had occasion to point out recently in a similar controversy. The construction our courts put on such transactions as we have here is, that the creditor, whether he be named as payee of the policy when it is issued, or becomes the payee afterwards by assignment, acquires the status of beneficiary as far as is necessary to make him whole and no further. As to the remainder of the insurance money, he stands as trustee for the estate of the insured, or whomsoever the insured may have validly appointed to be residuary beneficiary. Richards v. Ins. Co., 99 Mo. App. 88, 71 S. W. 487. See also Singleton v. Ins. Co., 66 Mo. 63; Heusner v. Ins. Co., 47 Mo. App. 336; Insurance Co. v. Rosenheim, 56 Mo. App. 27; Whitmore v. Supreme Lodge, 100 Mo. 36; Warnock v. Davis, 104 U. S. 775; Carnack v. Lewis, 82 U. S. 643; Insurance Co. v. O'Brien, 92 Mich. 584; Helmetag v. Miller, 106 Ala. 183; Stephens v. Warren, 101 Mass. 564; Wideman v. Hubbard, 88 Fed. 186; Tate v. B. & L. Ass'n, 97 Va. 74.

The circumstances before us in the present case, though they intimate rather than reveal the understanding between Stokes and the Meyer Brothers Drug Company, leave the impression on our minds that the former thought he had an interest in the policy beyond fifty dollars, and that neither party originally contemplated the appropriation by the drug company of the full sum made payable to it. Hence, the rule of law regarding the disposition of the proceeds of insurance policies in such circumstances, which obtains in this State, compels a decision which commends itself to us as perfectly just. While a different doctrine obtains in some localities, the cases cited and relied on by the appellant hold that an agreement that insurance on the life of a debtor shall enure to the creditor's exclusive benefit is only valid when the amount of the policy does not unreasonably exceed the debt owed. The egregious/ disproportion between what Stokes owed Meyer Brothers Drug Company and the amount of the insurance money made payable to it, would seem to put its position outside the effect of those decisions. Exchange Bank v. Loh, 104 Ga. 446; Amick v. Butler, 111 Ind. 578.

The point is made that if the appellant had no right to insure Stokes' life beyond a sum sufficient to make it safe as his creditor, the policy was void as a speculation or wager on the life of Stokes. This position is untenable. The law views the contract of insurance as having been made for the benefit of the appellant to the extent of its interest in Stokes' life, and for the benefit of Stokes' estate as to the excess of the fund realized from the policy. In the absence of evidence which forces the conclusion that such a contract was speculative, the opinion that it was not is adopted to avoid a forfeiture, which the law shuns when possible. The evidence in this case by no means requires us to believe Stokes shared in an unlawful speculation on his own life; but, as said before, rather inclines us to the opposite belief and therefore leaves Stokes' rights, which

are vested now in his personal representative, unimpaired by rules of law prescribed as measures of public policy. Carnack v. Lewis, supra. But when the facts are otherwise; when the insured acts contrary to the law's policy, inasmuch as such an act is not of that fraudulent character which affronts equity, the inclination of the courts is to forgive his fault and annul the transaction only so far as to make the creditor account for the surplus proceeds received by him. Warnock v. Davis; Insurance Co. v. Rosenheim; Insurance Co. v. Richards, surpa.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.