ALBRENT, Administratrix, Respondent, vs. SPENCER and others, Appellants.*

*February 3—February 28, 1958.*

* Motion for rehearing denied, without costs, on May 6, 1958.

For the appellants there were briefs by *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay, and oral argument by *George E. Bills.*

For the respondent there was a brief by *Henry P. Hughes* of Oshkosh, attorney, and *Genrich, Terwilliger, Wakeen, Piehler & Conway* of Wausau of counsel, and oral argument by *Mr. Hughes* and *Mr. Herbert L. Terwilliger.*

MARTIN, C. J.   The case was previously before this court in *Albrent v. Spencer* (1957), 275 Wis. 127, 81 N. W. (2d)

555, on appeal by the plaintiff from an order sustaining defendants' demurrer to the complaint.

Briefly, the facts as alleged in the complaint are: Prior to March 29, 1954, E. A. Albrent and William L. Spencer each owned substantially one half of the stock in Albrent Freight & Storage Corporation (hereinafter called the "company"). Albrent was indebted to Spencer in the amount of about $140,000. Albrent had purchased policies of insurance on his life aggregating the face value of $110,000, of which $85,000 was payable to his estate, $20,000 was payable to Spencer as his interest as creditor might appear, and $5,000 was payable to the company. These policies, together with his stock in the company, had been pledged by Albrent to Spencer to secure payment of the indebtedness. On March 29, 1954, the parties entered into a written agreement whereby Albrent transferred to Spencer the previously pledged stock, 4,980 shares, and the insurance policies, which policies had a cash surrender value of $20,396; and Spencer satisfied the indebtedness of Albrent to him and to the Albrent company. On May 28, 1954, Albrent died, and Spencer was paid the face value of the policies, $110,000. Plaintiff further alleged that Spencer was unjustly enriched in the amount of $92,348, the insurance proceeds in excess of the cash surrender value.

After the decision in the prior appeal defendants served and filed their answer. Plaintiffs then moved to strike portions (in paragraphs 11, 13, 15, and 16) of the answer as irrelevant. The order appealed from orders those portions stricken.

Generally, the allegations so stricken are to the following effect: In addition to the indebtedness of Albrent to Spencer at the time of the agreement in the amount of $140,000, Albrent was indebted to the Albrent company in amount of $53,000; that the district director of internal revenue held a claim against Albrent, as transferee, for taxes in amount

of $35,000; that the fair market value of Albrent's stock in the company did not exceed approximately $5,500; that there were various disputed claims between Albrent and the company; that Albrent was wholly insolvent; that the consideration paid by Spencer for the absolute assignment of the insurance policies exceeded the sum of $105,000; that the proceeds of the policies collected by Spencer after Albrent's death, together with the fair market value of the stock transferred, was substantially less than the consideration given Albrent by Spencer for the transfer of the stock and policies, as a result of which Spencer sustained a loss in excess of $30,000.

In the trial court's view, this court had determined in *Albrent v. Spencer, supra,* that by the agreement of March 29, 1954, Albrent assigned to Spencer only the cash surrender value of the insurance policies; that the agreement fixed the values of the insurance policies and the stock, and the amount of the indebtedness was paid in full; that parol evidence is not admissible to vary, interpret, or explain such values.

On the prior appeal plaintiff argued that by the agreement Albrent assigned to Spencer only the cash surrender value of the policies, whereas defendants maintained that he transferred complete ownership of the policies. In that appeal on demurrer to the complaint, this court held (p. 138):

"While it must be conceded that the majority rule is that, where an owner of a life insurance policy has an insurable interest therein he may make a valid assignment of the policy to a third party having no such insurable interest (29 Am. Jur., Insurance, p. 313, sec. 357), it clearly is in the interest of public policy to engraft an exception onto such rule to cover situations such as that which confronts us here. A desirable exception and one that we are compelled to adopt is that any purported absolute assignment by a debtor to a creditor of a policy, which had previously been pledged as security to the creditor is only valid between the immediate parties to the extent of enabling the creditor to realize the

cash surrender value of the policy. If the creditor after receiving such absolute assignment and the creditor-debtor relationship is terminated, continues to hold the policy for the purpose of gambling upon the life of the insured, he becomes a constructive trustee for the benefit of the estate of the deceased of any proceeds received upon the death of the insured, to the extent that such proceeds exceed the amount that would have been due such assignee if the creditor-debtor relationship had not been extinguished."

The amount of a creditor's insurable interest is the amount of the debt. If the amount of Spencer's insurable interest in Albrent—or, in other words, the amount of Albrent's indebtedness to him—exceeded the cash surrender value of the policies, it would not offend public policy if he retained the policies. If the proceeds realized from the policies on Albrent's death were less than the amount of the debt, Spencer would be entitled to keep the entire amount thereof. The rule, as so applied, permits the creditor to realize, to the extent that the proceeds from the policies may do so, the amount of his insurable interest, while at the same time it prevents him from realizing more than he is equitably entitled to.

If the amount received by the creditor is equal to the debt, there is no objection on the ground of a "gambling contract." If the amount received is greater than the debt, there is an "unjust enrichment" with liability for the amount exceeding the amount of the debt plus interest. But under these circumstances the exception to the rule spoken of does not come into play. As further stated in the previous opinion (p. 141) :

". . . the court will be obliged to hold as a matter of law that Spencer and the other defendants who are his assignees are constructive trustees for the benefit of Albrent's estate of that portion of the life insurance proceeds which exceeds the amount which would have been owing on Albrent's indebtedness to Spencer if the absolute assignment of the policies had not been taken. If any premiums had been paid by the defendants to continue the policies in force, such advances

would also be deductible in determining the amount subject to the constructive trust."

"Cash surrender value" and "indebtedness" were used interchangeably, it seems; presumably, the "cash surrender value" of the policies was sufficient to cover the indebtedness. On the pleadings in the case before us now we have an indebtedness of considerably more than the cash surrender value of the policies. On the first appeal we had before us the allegation that Spencer had been unjustly enriched to the extent of $92,000, in other words, that the proceeds of the policies exceeded the debt by that amount. On this appeal we have defendants' allegation in the answer that the debt exceeded the face amount of the policies by $30,000.

So here the issue to be decided is whether Spencer's insurable interest was or was not exceeded by the proceeds realized from the policies when considered together with the value of the stock which was simultaneously transferred by the agreement. This does not mean that the agreement itself is attacked. It assigned the stock and the policies to Spencer; it released Albrent from the debt. Thereafter, Spencer could not look to Albrent for payment of the debt; he had to look to the property assigned. Extinguishment of the debtor's liability to him did not extinguish the insurable interest unless the value of the property assigned was as great as the amount of the debt. By the same rule, however, if that value was more than the debt, Spencer held the excess in trust for the benefit of the assignor's estate.

This is not a suit to set aside or modify the terms of the contract (the assignment releasing the debt). This is an action in equity. Spencer is charged with unjust enrichment. The contract is merely evidence of the values placed on the property assigned at the time it was entered into, but these values may or may not reflect the true amount of Spencer's insurable interest. True, the assignment admits of such

values. The answer alleges that at the time of the agreement both Albrent and the Albrent company were insolvent and the stock transferred had considerably less value than the complaint alleges is shown by the agreement. All of the portions of the answer which were ordered stricken go to the question of what Spencer's insurable interest was and the companion question of the value of the stock transferred. If defendants can show that the value placed on the stock in paragraph 8 of the agreement (as the amount Albrent would pay Spencer to reacquire it, upon certain contingencies) was not its true value, equity requires that they be permitted to offer such evidence. Plaintiff, likewise, will be permitted to put in whatever evidence she has with respect to the true values.

Considerable space in the briefs is used to propound the mathematical theories of the parties. It will be for the trial court, when they have presented their evidence, to make its findings thereon. We are not concerned with these matters on this appeal.

*By the Court.*—Order reversed.