Merle HABERER, Florence Haberer, and Haberer Dairy & Farm Equipment, Inc., Plaintiffs and Appellants,

v.

FIRST BANK OF SOUTH DAKOTA (NA), Aberdeen, South Dakota, Defendant and Appellee,

and

George J. Rice, Defendant.

No. 15918.

Supreme Court of South Dakota.

Oral Argument March 22, 1988.

Decided Sept. 14, 1988.

Canton Food Center.

Rick Johnson of Johnson, Eklund & Davis, Gregory, Paul Riley of Aberdeen, for plaintiffs and appellants.

Carlyle E. Richards of Ronayne & Richards, Aberdeen, Francis Smith of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellee First Bank of South Dakota.

JOHNSON, Circuit Judge.

This is an appeal from an order granting summary judgment for the appellee, First Bank of South Dakota, on the grounds that appellants, Merle Haberer and Florence Haberer (Haberers), failed to raise a compulsory counterclaim in a prior action. We affirm.

## FACTS

Haberers were the principal owners of Haberer Dairy & Farm Equipment, Inc. Haberers were in the business of marketing milk bulk tanks which Merle Haberer had invented and patented. During the

latter part of 1982, Haberer sought to build a manufacturing plant for the milk bulk tanks in Aberdeen, South Dakota. In January, 1983, Haberer approached First Bank (Bank), indicating he needed $150,000.00 for start-up expenses on the plant. Bank agreed to loan the money if Haberer would sell some other property and reduce its existing indebtedness to the Bank. In order to complete the loan, Bank further requested that Haberers obtain other guarantors or co-signers for the indebtedness.

On May 5, 1983, Haberer and Edwin Van Meter and Mildred Van Meter (Van Meters) of Gypsum, Kansas, met with Bank representatives. Van Meters had pledged approximately $45,000.00 in CD's to secure the indebtedness. Haberers claim that at the time, Bank indicated they would loan them the $150,000.00 at 13 per cent annual interest on a long term basis. Haberers further allege that Bank advised them that the formal papers would be drawn up immediately. Thereafter, Haberers commenced the development of the manufacturing plant. Bank instructed Haberers to make short-term borrowings from a branch office pending the approval of the formal loan papers.

In August, 1983, Haberers inquired about the signing of the loan documents and security agreements. Bank advised them that they would only loan $125,000.00, that the interest rate would be 14.5 per cent rather than 13 per cent, and that the loan would be on a ninety-day renewal basis. Haberers accepted the terms of the new loan agreement and continued to proceed with a scaled down construction of the manufacturing plant. In October, 1983, Haberers learned that Bank would only forward them $104,079.98 because $23,920.02 was needed to pay off the loans given at the branch office.

Haberers made no payments on the note. On May 8, 1984, Bank brought an action against Haberers to recover on the note (hereinafter denominated "first action"). Bank requested relief in the amount of $125,000.00 plus interest and costs and sought possession of the collateral for the purposes of liquidation. On May 15, 1984, when attorney George J. Rice (Rice) entered an appearance on behalf of the Haberers, complaint was served upon Rice.

In June, 1984, Rice, on behalf of Haberers, entered into a stipulation which provided that Haberers had until July 2, 1984, to refinance or discharge the indebtedness to Bank. The stipulation further provided that failure to comply with the conditions of the stipulation would allow Bank to apply, upon three days notice, for judgment against Haberers, and Haberers would not resist the judgment. Haberers did not fulfill the obligations set forth in the stipulation. Bank then gave notice of its intention to take default judgment, which it took on July 19, 1984. This judgment in the first action was never set aside, vacated or appealed from. Neither Haberers nor Rice served any answer or counterclaim to the cause of action set out in the complaint in the first action.

Bank then proceeded to collect and liquidate the collateral that secured Haberers' loan. This court reviewed the methods used by Bank to liquidate the collateral. *First Bank of South Dakota v. Haberer Dairy & Farm Equipment, Inc., et al.,* 412 N.W.2d 866 (S.D.1987).

On August 16, 1986, Haberers commenced this action against Bank and their former attorney Rice. In separate counts, Haberers alleged that Rice negligently represented them in the foreclosure action, and that Bank breached its agreement with Haberers by refusing to loan the $150,000.00.

All of the allegations surrounding the alleged breach of contract on the part of Bank occurred prior to the first action.

In March, 1987, Bank moved that it be dismissed from the lawsuit because of the failure of Haberers to raise their counterclaim in the first action. The trial court, after reviewing the pleadings and taking judicial notice of the first action, dismissed Bank from the suit.

## I.

ARE ATTORNEY AFFIDAVITS SUFFICIENT TO SUPPORT A MOTION FOR SUMMARY JUDGMENT?

■ The general rule is that attorney affidavits or testimony in litigation matters should not be used unless the affidavits or testimony relate to uncontested matters or matters of formality. DR 5–102, as found in SDCL 16–18 (Appx.) (The Code of Professional Responsibility),[1] provides:

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

Two exceptions found in DR 5–101(B) are applicable to this case:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

South Dakota case law is clear regarding attorney affidavits or testimony involving contested matters. In *Jones v. South Dakota Children's Home Society, Sioux Falls*, 90 S.D. 126, 238 N.W.2d 677 (1976), an attorney who had drafted the testator's will was also the proponent of the will when it was challenged in probate court. The will was challenged on the grounds that the testator lacked testamentary capacity. At trial, the attorney took the stand on behalf of the proponent and testified, not only to uncontested matters such as an execution and attestation of the will, but also as to his impressions and observations about the testator's competency and mental capacity to execute the will. Such testimony was in direct violation of DR 5–101(B), because the issue of the lawsuit was whether the testator had testamentary capacity.

Similarly, in *Maryland Casualty Co. v. Delzer*, 283 N.W.2d 244 (S.D.1979), the attorney filed affidavits with respect to a motion for summary judgment. The rule set forth in *Maryland Casualty* is "When submitting affidavits in support of summary judgment motions, an attorney's affidavit is governed by the same rules of admissibility in regard to personal knowledge and competency (citations omitted). Furthermore, an attorney's affidavit should not be utilized for summary judgment decisions unless the testimony therefrom would be admissible at trial." 283 N.W.2d at 249.

The affidavits in *Maryland Casualty* were not proper because the attorney did not have evidence that would have been admissible at trial based on the lack of firsthand knowledge. It further appears that the evidence may have gone to contested matters, or not been a mere formality. Such a reading is consistent with DR 5–101(B).

Finally, in *Senger v. Senger*, 308 N.W.2d 395 (S.D.1981), an attorney filed an affidavit in resistance to the opposing parties' motion at a show cause hearing. The attorney did not orally testify, but his affidavit was considered. The court, in affirming the rule set forth in *Jones, supra,* noted that any testimony that the attorney would give that may have dealt with contested issues at the show cause hearing would have been incompetent. Then, after reviewing the affidavit, the court concluded that all but one of the statements set forth in the affidavit would be admissible since they did not deal with contested issues. The paragraph in the affidavit that did deal with a contested matter was stricken as incompetent.

In reviewing the rules set forth in applicable case law, attorneys must be cautioned when using affidavits in support of a motion for summary judgment, or any affidavits with respect to litigation. Clearly, the affidavits must not deal with con-

1. Effective July 1, 1988, this court approved the repeal of the Code of Professional Responsibility and reenacted the South Dakota Rules of Professional Conduct. SDCL 16–18 (Appx.). *See* Rule 3.7.

tested matters or facts, or otherwise give evidence regarding matters that would be questions of fact.

■ After reviewing the affidavits in this action, this court finds that the affidavits were proper in this situation. Both parties had requested the trial court to take judicial notice of the first action. The first affidavits in question merely brought the trial court's attention to the first action, the litigants involved, and that Bank counsel was presently representing Bank. The second page of the affidavit refers to the pertinent facts of the first action for the convenience of the trial court. We also note that at the time the first action was filed and up until the point when default judgment was entered on behalf of Bank, Haberers did not dispute any of the facts.

■ The second affidavit filed by Bank's counsel contains references to the first action. Copies of the pleadings in the first action are attached. The only different allegation made in the affidavit is that Bank's counsel alleges that they had served a copy of the complaint on the opposing parties. This is not improper since Bank's counsel could have filed a separate affidavit of service or a certificate of service with respect to the complaint. In essence, what Bank's counsel stated in his affidavit was nothing more than he could have stated in a motion for summary judgment. Therefore, since the affidavit filed by Bank's counsel dealt with an uncontested matter, and was used merely to draw the trial court's attention to a prior formal proceeding, the affidavit was sufficient for the trial court's consideration for summary judgment.

## II.

CAN THE COMPULSORY COUNTER-CLAIM STATUTE BE RAISED AS A BAR IN A SECOND ACTION BE-TWEEN PARTIES WHERE A DE-

FAULT JUDGMENT WAS ENTERED IN THE FIRST ACTION?

Haberers contend that the compulsory counterclaim statute does not apply in this situation because no pleading was filed on the part of Haberers with respect to the first action. The trial court determined that the allegations set forth in the second action constituted a compulsory counterclaim and that SDCL 15–6–13(a) (Rule 13(a)) applied even when no pleadings had been filed.

■ "The purpose of the compulsory counterclaim statute, SDCL 15–6–13 [2] 'is to reduce the volume of litigation and promote the just, speedy, and inexpensive determination of controversies by barring relitigation of the same set of facts.'" *Ainsworth v. First Bank of South Dakota*, 420 N.W.2d 32, 33–34 (S.D.1988), *quoting Staab v. Skoglund*, 89 S.D. 470, 479, 234 N.W.2d 45, 50 (1975). The standards set forth for determining whether a claim is compulsory are:

1. Are the issues of fact and law raised by the claim and counterclaim largely the same?

2. Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?

3. Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?

4. Is there any logical relation between the claim and counterclaim?

*Olawsky v. Clausen*, 87 S.D. 578, 212 N.W. 2d 653 (1973). An affirmative answer to any one of these standards make the counterclaim compulsory. *Id.* After reviewing the facts, this court is convinced that Haberers' claim is compulsory.

Whether Rule 13 applies to cases where no pleading is filed is a question of first impression for South Dakota. The trial court used the case of *Heffern v. First Interstate Bank*, 99 N.M. 531, 660 P.2d 621 (Ct.App.1983), for its decision that Rule

---

**2.** SDCL 15–6–13(a) provides in relevant part: A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occur- rence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

13(a) applies to no pleading cases. In *Heffern,* the plaintiff was a defendant in four prior foreclosure suits, which resulted in the entry of a default and stipulated judgments. Later, Heffern decided to sue First Interstate Bank. The Bank moved and was granted summary judgment under Rule 13(a), (identical to SDCL 15–6–13(a)). The New Mexico Court of Appeals, in affirming the trial court, held "that Rule 13 applies to this case even though no pleading was filed. Any other rule would frustrate the purpose behind Rule 13." 660 P.2d at 623–624.

Haberers contend that the definition of "pleading" in Rule 13(a) implies that a pleading is necessary before the compulsory counterclaim rule becomes applicable, and cite *Martino v. McDonald's System, Inc.,* 598 F.2d 1079 (7th Cir.1979), for their position. In *Martino,* the court considered whether an earlier consent judgment against plaintiff Martino precluded a second action to be brought against McDonald's Systems. McDonald's Systems brought a federal diversity action against Martino charging that he violated certain contract provisions. Immediately after the complaint was filed in *Martino,* the parties entered into settlement negotiations, resulting in the entry of a consent judgment before Martino filed an answer. The Seventh Circuit refused to apply a broad rule terminating the rights of a party by failing to raise certain claims.

> Rule 13(a) is in some ways a harsh rule. It forces parties to raise certain claims at the time and place chosen by their opponents, or to lose them. The rule, however, is the result of a balancing between competing interests. The convenience of the party with a compulsory counterclaim is sacrificed in the interest of judicial economy.... The earlier action between these parties was terminated by a consent judgment before the answer was filed. We see little sense in applying the

broad bar established under Rule 13(a) to an action that ended with virtually no burden on the judicial calendar.

598 F.2d at 1082.

The court further noted that "we believe that this argument [regarding the deadline for filing an answer] exaggerates the effect of not applying Rule 13(a). *The Rules (sic) themselves provide for default judgment against a party for failure to plead, [citation omitted], and the effect of such a judgment as res judicata, [citations omitted], prevents the non-pleading party from profiting at the result of his non-compliance."* 598 F.2d at 1082–1083 (emphasis added).

■ The logic behind the *Martino* case softens the harshness of the rule set forth in *Heffern.*[3] This court does not hold that Rule 13(a) applies in every non-pleading case. As noted earlier, situations may arise whereby no pleading was filed, or a consent judgment was entered. This court does find, however, that the compulsory counterclaim statute does apply to these facts.

■ The first action was brought on May 8, 1984, by Bank to foreclose on the note executed between Haberers and Bank. In June, a stipulation was entered into between the parties that allowed Haberers an extension of time to secure additional financing or otherwise reduce the debt with Bank. Such stipulation was signed by both parties and approved by the trial court. The stipulation provided that Bank could take a default judgment against Haberers in the event the stipulation was not fulfilled. Further, Haberers contested the actions of the Bank with respect to the disposition of collateral in the first action. *See First Bank of South Dakota v. Haberer Dairy & Cattle, supra.* Haberers' actions took up approximately two years of the trial court's time. At no time until prior to the entering of the final opinion by the

**3.** Indeed, there is a distinction between a default and a consent judgment. "Typically, courts have given default judgments full effect and have held that a counterclaim omitted from an action that terminates in a default judgment will be barred from any subsequent suits. However, if the parties resolve their dispute by means of a consent judgment, defendant may reserve the right to bring a later action on this counterclaim and no bar will result." 6 Wright, Miller and Kane, Federal Practice and Procedure § 1417 (1987) (footnotes omitted).

South Dakota Supreme Court in the first action did Haberers file a second action. The purpose of Rule 13 would be frustrated in this situation if the Haberers were allowed to bring this second action after the first action had been completely litigated over two years. Therefore, Rule 13 does apply to this situation and Haberers' failure to raise their claim in the first action prevents them bringing this action.

## III.

### HAD HABERERS' CLAIM AGAINST BANK MATURED PRIOR TO THE ENTRY OF JUDGMENT IN THE FIRST ACTION?

█ Haberers next contend that their claim had not yet matured at the time the first action was filed, and therefore they could not bring an action until this time. The rule is that a counterclaim must be in actual existence at the time the original action is filed.

A *matured* counterclaim ... is a claim which has *accrued* to the pleader: that is to say, when the right to sue arises.
...
In all events, a claim accrues [and limitations become its course] when a person "has some notice of his cause of action, an awareness either that he has suffered an injury or that another person has committed a legal wrong which ultimately may result in harm to him." (emphasis original).

*Myers v. Clayco State Bank,* 687 S.W.2d 256, 263 (Mo.App.1985) *quoting Krug v. Sterling Drug, Inc.,* 416 S.W.2d 143, 150 (Mo.1967).

█ The complaint Haberers filed to instigate the second action is a breach of contract action. The facts supporting their breach of contract theory all deal with occurrences and transactions with Bank prior to January, 1984. The first action was not brought until May, 1984, and a judgment was not entered until July, 1984. It is clear that Haberers had notice of their cause of action because they had actual knowledge of the transactions with Bank prior to January, 1984. Therefore, Haberers had the right to sue Bank on the breach

of contract action when the first alleged contract was breached.

Haberers contend, however, that they had not incurred a legal wrong which would result in damages. This argument is without merit. As was noted in *Myers, supra,*

The guarantors do not argue that they did not know they were not aware of the several wrongs [they now seek to redress] at the time they were obliged to plead to the Platte County action, but only that the full extent of the damage was not capable of ascertainment until the three litigations had run their course—and hence those several claims were not yet mature. *Ascertainment,* however, refers to the fact of damage, rather than to the precise amount. (citation omitted). The several claims—misrepresentation, outrageous conduct, abuse of process and prima facie tort— all rest on allegations of wrong and injury known to the guarantors even before their several duty to plead ... arose.... (emphasis original).

687 S.W.2d at 263. Similarly, in the case at hand, the Haberers knew of all the transactions that occurred with the Bank. At the very least, assuming their complaints should be true, they had suffered at least nominal damages at the time of the first action. Therefore, we conclude Haberers' claim was mature at the time the first action was filed.

## IV.

### DOES THE DOCTRINE OF *RES JUDICATA* BAR HABERERS' CLAIM ABSENT THE COMPULSORY COUNTERCLAIM?

Finally, Haberers argue that this action is not barred by the doctrine of res judicata. Having determined that Haberers' present action was a compulsory counterclaim that should have been advanced in the foreclosure action, we find it unnecessary to deal with this issue.

The judgment of the trial court is affirmed in all respects.

MORGAN, SABERS, HENDERSON and MILLER, JJ., concur.

JOHNSON, Circuit Judge, sitting for WUEST, C.J., disqualified.