**Diane K. FROILAND, Executrix In re Estate of Richard T. Froiland, Deceased, Plaintiff and Appellee,**

v.

**James L. TRITLE, Defendant and Appellant.**

**No. 17659.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 11, 1991.

Decided May 13, 1992.

Lewayne M. Erickson and Eric N. Rasmussen, Erickson, Helsper & O'Brien, Brookings, for plaintiff and appellee.

Frank E. Denholm and Steven J. Britzman, Denholm, Glover & Britzman, Brookings, for defendant and appellant.

AMUNDSON, Justice.

James Tritle appeals from a summary judgment entered in favor of Diane Froiland, the executrix of Richard Froiland's estate. We affirm.

FACTS

James Tritle (Tritle) is a dentist from Brookings, South Dakota, who practiced for roughly forty years. In anticipation of retirement, he sold his practice to a young dentist, Richard Froiland (Froiland), pursuant to a purchase agreement (hereinafter "Agreement") dated October 4, 1985. In the Agreement, Tritle agreed to transfer

all of the accounts receivable, assets, fixtures and furnishings, leasehold improvements, patient records, and a covenant not to compete to Froiland for a total purchase price of $50,000. The Agreement called for Froiland to make a down payment of $12,000 and pay the remaining $38,000 balance, plus ten percent interest, pursuant to a ten-year amortized plan, which required payments of $500 per month.

The Agreement did not require that life insurance be purchased by either party to insure complete payment in the event of Froiland's untimely death. Tritle, seeking to assure the payments provided for in the Agreement in his retirement years, requested that Froiland purchase credit life or a mortgage insurance policy. Froiland refused to pay for such insurance; but, after meeting with an insurance agent Phil Hegg (Hegg), he allowed Tritle to purchase an ordinary life policy on his life, submitted to a required physical exam, and completed necessary paperwork for the policy.

The ordinary life insurance policy (hereinafter the "policy") was subsequently issued to Tritle as the beneficiary, on Froiland's life for $38,000, which was the original principal balance on the Agreement. The policy did not provide for a reduction in the policy benefits to coincide with the gradual payoff of the principal on the Agreement.

Froiland unexpectedly passed away October 15, 1990, at which time there was a balance owing on the Agreement of $24,302.21. Tritle made a claim on the insurance policy, which was paid to him in the amount of $37,753. Diane Froiland, executrix of Froiland's estate, made several additional monthly payments to Tritle before she learned of the insurance payment. Upon learning of this insurance policy, she demanded that the money Tritle received in excess of the balance due on the Agreement be returned to the estate. She further demanded that the insurance proceeds be used to satisfy the outstanding amount owed on the Agreement. Tritle refused to apply the proceeds to the amount owed or to return any excess to the estate.

The trial court granted summary judgment in favor of Froiland, awarding the estate the amount in excess of the balance owed, plus interest less the premiums Tritle paid, or approximately $14,994.42. Trial court further ordered that the proceeds from the policy were to be applied to the outstanding amount owed in the purchase agreement. Tritle appeals.

ISSUES

1.  Whether the trial court erred in limiting Tritle's insurable interest to the amount of debt owed by Froiland at the time of his death?

2.  Whether the trial court erred in granting summary judgment prior to close of discovery period?

*Standard of Review*

The standard of review for a grant or denial of summary judgment is as follows:

' "In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper." '

*Waddell v. Dewey County Bank*, 471 N.W.2d 591, 593 (S.D.1991) (quoting *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 836–37 (S.D.1990), and *Pickering v. Pickering*, 434 N.W.2d 758, 760–61 (S.D.1989)).

With these considerations in mind, we discuss the merits of Tritle's appeal.

### 1. Insurable Interest

Trial court granted Froiland's motion for summary judgment based on its conclusion that the insurable interest of a creditor exists only to the extent of the obligation owing at the time of the debtor's passing. Thus, Tritle only possessed an insurable interest for the outstanding obligation when Froiland passed away, approximately $24,302.21.

Tritle argues that he is entitled to the full amount of the death benefit proceeds because his insurable interest in Froiland's life existed at the time the Agreement was executed and is not reduced as the amount of the debt decreases as the monthly installment payments are made pursuant to the Agreement. The applicable statutes are SDCL 58–10–3 and 58–10–4(3). SDCL 58–10–3 permits a creditor to procure insurance on a debtor's life if the creditor has an "insurable interest" and provides as follows:

Any individual of competent legal capacity may procure or effect an insurance contract upon his own life or body for the benefit of any person. But no person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable to the individual insured or his personal representatives, or to a person having, *at the time when such contract was made, an insurable interest in the individual insured.* (Emphasis added.)

SDCL 58–10–4(3) defines an insurable interest as:

'Insurable interest' with reference to personal insurance includes only interests as follows:

(3) A person who is a party to a contract or option for the purchase or sale of an interest in a business partnership or firm, or of shares of stock of a closed corporation or of an interest in the shares, has an insurable interest in the life of each individual party to the contract *and for the purpose of the contract only,* in addition to any insurable interest which may otherwise exist as

to the life of the individual. (Emphasis added.)

▮▮ We have not previously interpreted these statutes, nor have we expressly ruled as to the extent of a creditor's insurable interest in a debtor's life. The trial court, however, found persuasive authority in the Eighth Circuit Court of Appeals with *Sachs v. United States,* 412 F.2d 357 (8th Cir. 1969), *cert. denied* 396 U.S. 906, 90 S.Ct. 220, 24 L.Ed.2d 182, wherein that court stated:

Since the validity of a credit insurance policy depends upon the existence of a debt owing to the beneficiary of the policy, the insurance contract in the debtor/creditor relationship cannot be considered as independent and apart from the debt transaction.... If the creditor accepts the insurance proceeds, these must be applied against the debt as the insurance contract depends upon the debt for its validity.

*Id.* at 365. The controlling rule appears to be that a creditor only maintains an insurable interest as far as is necessary to make him whole. *Sachs,* 412 F.2d at 365; *Altus Bank v. State Farm Fire & Cas. Co.,* 758 F.Supp. 567 (C.D.Cal.1991); *Godwin v. Pate,* 667 S.W.2d 201 (Tex.App. 5 Dist. 1983); *Nat. City Bank v. Strong Bros. Enterprises,* 651 P.2d 451 (Colo.App.1982); *Albrent v. Spencer,* 3 Wis.2d 273, 88 N.W.2d 333 (1958); *Forster v. Franklin Life Insurance Company,* 135 Colo. 383, 311 P.2d 700 (1957); *Morrow v. National Life Ass'n,* 184 Mo.App. 308, 168 S.W. 881 (Mo.App.1914); *Strode v. Meyer Bros. Drug Co.,* 101 Mo.App. 627, 74 S.W. 379 (1903). The rationale behind this rule is that allowing a creditor to collect the full amount of the death benefit proceeds although the debt was extinguished, would allow unjust enrichment of the creditor.

Tritle relies on other decisions which have held that a creditor who is named as beneficiary in an insurance policy on a debtor's life is entitled to the entire proceeds of the policy, even where the proceeds exceed the amount of the debt. *Mutual Aid Union v. White,* 166 Ark. 467, 267 S.W. 137 (1924); *Amick v. Butler,* 111 Ind.

578, 12 N.E. 518 (1887); *Rittler v. Smith,* 70 Md. 261, 16 A. 890 (App.1889); *Chapman v. Scott,* 234 S.C. 469, 109 S.E.2d 1 (1959). Other courts have noted that this rule applies only where there is not such a disproportion between the debt and the amount of the policy as to imbue the transaction in the nature of a wager. *See Rittler,* 16 A. at 893.

▉ The insurance proceeds Tritle sought to retain exceeded by approximately fifty-five percent the unpaid balance on the Agreement and, thus, would afford Tritle a healthy retirement windfall. Such a result is not justified by the Agreement, statutes, or case law. We therefore expressly adopt the rule that a creditor is only entitled to an insurable interest in the amount of the unpaid portion of the underlying debt, and affirm the trial court's conclusion that Tritle had an insurable interest in Froiland's life to the extent of the unpaid balance due on the Agreement at the time of Froiland's death, plus the amount of premium Tritle paid.

Trial court, after concluding the insurable interest extended only to the amount of the debt, awarded Froiland's estate the excess proceeds pursuant to SDCL 58–10–5, which provides:

> If the beneficiary, assignee, or other payee under any contract made in violation of § 58–10–3 receives from the insurer any benefits thereunder accruing upon the death, disablement, or injury of the individual insured, the individual insured or his executor or administrator, as the case may be, may maintain an action to recover such benefits from the person so receiving them.

In light of our holding that Tritle's insurable interest only extended to the amount of Froiland's debt when he passed away, we affirm trial court's award of the excess proceeds to Froiland's estate. Tritle did not raise the issue of the trial court's order that he apply death benefit proceeds to the outstanding balance on the Agreement. *Peterson v. Safway Steel Scaffolds Co.,* 400 N.W.2d 909 (S.D.1987). Thus, the trial court's order is affirmed in all respects.

**2. Summary Judgment**

▉ Tritle argues that the trial court should not have granted summary judgment prior to hearing evidence from Hegg regarding Froiland's and Tritle's intent as to the extent of the insurable interest in Froiland's life when the parties formed the Agreement and subsequent life insurance policy. In resistance to Froiland's motion for summary judgment, Tritle offered the affidavit of his attorney regarding evidence Hegg would present. In *Haberer v. First Bank of South Dakota,* 429 N.W.2d 62 (S.D.1988), we addressed the use of attorney affidavits to support summary judgment motions, stating as follows:

> [A]ttorneys must be cautioned when using affidavits in support of a motion for summary judgment, or any affidavits with respect to litigation. Clearly, the affidavits must not deal with contested matters or facts, or otherwise give evidence regarding matters that would be questions of fact.

*Id.* at 65–66. Clearly, the affidavit offered by Tritle's counsel concerned a question of fact. Thus, pursuant to *Haberer,* it would have been a more prudent course to offer an affidavit from Hegg to attempt to show that a genuine issue of fact did exist.

In light of our holding regarding the extent of Tritle's insurable interest, we find that trial court correctly concluded Hegg's testimony would not create a genuine issue of material fact. The parties' intentions as to the insurable interest cannot override the controlling law adopted by our legislature, since the legislature establishes the public policy for a transaction of this nature in this state. As the only disputed issue in this case was the extent of Tritle's insurable interest, entirely a question of law, summary judgment at the time it was granted was proper. The decision of the trial court is hereby affirmed.

MILLER, C.J., and HENDERSON, WUEST and SABERS, JJ., concur.