#24818-a-SLZ

**2008 SD 129**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JOSEPH R. SPENCER and
KANDY SPENCER,                                    Plaintiffs and Appellants,

    v.

ESTATE OF MARY JO SPENCER,
JANE SPENCER BRADY, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF MARY JO SPENCER,                               Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JEROME A. ECKRICH, III
Judge

* * * *

TERRY L. PECHOTA                          Attorney for plaintiffs
Rapid City, South Dakota                  and appellants.

JOHN STANTON DORSEY of
Whiting, Hagg and Hagg, LLP               Attorneys for defendants
Rapid City, South Dakota                  and appellees.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 3, 2008

OPINION FILED **12/30/08**

#24818

ZINTER, Justice

[¶1.]          Joseph and Kandy Spencer, husband and wife (Spencers), sued Joseph's mother's estate (the Estate of Mary Jo Spencer (the Estate)), claiming entitlement to a one-half interest in thirty-two acres of real property titled in Mary Jo's name.  Alternatively, Spencers sought the monetary value of their asserted interest in the property.  The circuit court granted summary judgment in favor of the Estate, and Spencers appeal.  We affirm on the ground that all applicable statutes of limitations expired.

I.

[¶2.]          Mary Jo Spencer and Dale Spencer are the deceased parents of Joseph Spencer.  This dispute arises out of a 1973 oral agreement between Dale and Joseph to jointly purchase real property.

[¶3.]          According to Joseph, in 1973, Dale approached Joseph about purchasing equal interests in thirty-seven acres of land that was going to be sold at auction.  The purported agreement was never reduced to writing.  On September 10, 1973, Dale purchased the property from Georgia Baker.  Baker and Dale subsequently entered into a contract for deed to finance the purchase.  The terms included a purchase price of $37,000, a down payment of $9,250, and the balance to be paid in five annual payments of $5,550.  On September 12, 1973, Joseph gave Dale $9,250, and Dale then made the down payment to Baker.  On September 14, 1973, Baker executed and escrowed a warranty deed.  The deed conveyed title to the thirty-seven acres to Dale alone.  From 1974, until the final payment in November of 1978, Dale made the annual payments.  During this same period, Joseph and

-1-

Kandy signed several checks payable to Dale with the notation that each represented a "land payment."

[¶4.]        On July 1, 1975, Baker and Dale amended the contract for deed to facilitate Dale in obtaining clear title to 5.8 acres of the property so Dale could build a home.  Unlike the original contract for deed, under the 1975 amendment, Baker agreed to deed the 5.8 acres to both Dale and Joseph.  Baker also agreed to separately deed the remainder of the property (approximately thirty-two acres) to both Dale and Joseph.  The amended contract indicated that the new 1975 conveyance of the entire property to Dale and Joseph would be a substitute for the 1973 deed.  Baker was responsible for escrowing the substitute deed at a designated bank.

[¶5.]        In accordance with the amended contract for deed, Baker executed two deeds.  On July 1, 1975, Baker deeded the entire thirty-seven acres to Dale and Joseph.  On July 22, 1975, Baker also deeded the 5.8 acres to Dale and Joseph.  For reasons not explained in the record, the 1975 deed conveying the 5.8 acres was recorded on July 30, 1975, but the July 1, 1975 deed conveying the entire thirty-seven acres to Dale and Joseph was never recorded.  Instead, the original 1973 deed conveying the thirty-seven acres to Dale alone was recorded on April 10, 1980, approximately seventeen months after a final payment on the contract for deed.  Thus, under the recorded deeds, Joseph was a record joint owner of the 5.8 acres, but not the remaining, approximately thirty-two acre parcel conveyed to Dale alone.  That thirty-two acre parcel is the subject of this litigation.

[¶6.]		The record does not reflect any disputes regarding ownership of the property until 1984. In 1984, Spencers filed for bankruptcy. Spencers' bankruptcy schedules claimed a one-half interest in the thirty-two acres. On September 19, 1984, Spencers' attorney received a letter from attorney Alvin J. Ford indicating a problem with the deeds supporting Spencers' claim to the one-half interest in the thirty-two acres. Ford disclosed that according to the recorded deeds, Baker had deeded the thirty-seven acres to Dale alone by the September 14, 1973 deed. Ford further disclosed that only the 5.8 acres was deeded to Dale and Joseph by the July 22, 1975 deed. Ford advised that there was a cloud on Joseph's claim to a one-half interest in the remaining thirty-two acres necessitating a quiet title action.

[¶7.]		Spencers' bankruptcy attorney subsequently ordered a title search of the records of the register of deeds, clerk of courts, and treasurer of Meade County. The search confirmed that the only property in Joseph's name was his joint interest in the 5.8 acres. Spencers then confronted Dale, questioning why Joseph's name was not on the deed to the other thirty-two acres. Dale told Spencers he did not have to explain, and Dale refused to talk with Joseph's bankruptcy lawyer. As a result of these discoveries and events in 1984, Spencers felt "totally duped," "betrayed" and they conceded that they knew they had been "deceived," yet they "didn't do a thing" about it. Spencers further conceded that, whether or not they had seen a deed with their name showing their one-half interest in the property, they knew that the property should have been deeded to Joseph and that they had been defrauded.

[¶8.]	Notwithstanding these 1984 discoveries, Dale died in 1994, without Spencers having taken any action to pursue their ownership claim. Attorney Russell Molstad probated Dale's estate. On April 4, 1994, Molstad sent a letter to Dale's beneficiaries disclosing the record title of Dale's real estate. This letter again reflected that Joseph did not have an interest in the property, except for a portion[1] of the 5.8 acres. On August 4, 1994, the personal representative's final report was sent to Joseph. In accordance with the recorded deeds, the report proposed a distribution of the thirty-two acres to Mary Jo, with Joseph only retaining a one-half interest in his portion of the 5.8 acres. Joseph did not object to the proposed distribution or file a claim against Dale's estate. Joseph received a copy of the final decree of distribution, dated August 19, 1994, conveying the disputed thirty-two acres to Mary Jo.

[¶9.]	The record reflects Spencers further failed to pursue their claimed ownership interest from the 1994 probate until 2003. In January 2003, Kandy visited Mary Jo and asked if there might be any records to explain why Joseph was not a record owner. Mary Jo and Kandy went through Dale and Mary Jo's safe deposit box and discovered the 1975 contract for deed and the 1975 warranty deed conveying title to the thirty-seven acres to Dale and Joseph as tenants in common. Spencers contend that this was the first time they knew of the existence of these documents. No action, however, would be taken to pursue Joseph's claimed interest in the property for more than three more years.

---

1.	To facilitate construction of Dale's home, on October 28, 1976, Joseph and Kandy had conveyed their interest in approximately 1.65 acres of the 5.8 acres to Dale and Mary Jo as joint tenants with rights of survivorship.

[¶10.]     In August 2005, Mary Jo died.  Under the terms of her will, the thirty-two acres was to be divided equally among Mary Jo's four children.  In March 2006, Joseph filed a $200,000 claim against the Estate claiming that he was entitled to an equitable lien on one-half of the value of the property.  The Estate's personal representative disallowed Joseph's claim.

[¶11.]     On May 9, 2006, Spencers commenced this suit against the personal representative and the Estate, seeking a declaration of entitlement to a one-half interest in the thirty-two acres.  Alternatively, Spencers sought specific performance or an equitable lien for the amount they had contributed towards the purchase of the property.  Spencers' claims were brought under causes of action for declaratory judgment, constructive trust, equitable lien, specific performance, and oral contract.  They did not plead any cause of action based upon fraud.

[¶12.]     The circuit court granted summary judgment in favor of the personal representative and the Estate.  The court concluded that Spencers' causes of action accrued twenty-two years earlier during the September 1984 bankruptcy proceedings, when Spencers learned that Dale alone was the record titleholder and they had been deceived.  Considering the almost twenty-two year delay in commencing this action, the court concluded that Spencers' claims were barred under any applicable statute of limitations, and the limitation periods were not tolled under the doctrines of fraudulent concealment or equitable estoppel.  The court also rejected Spencers' claim that the unrecorded 1975 deed took priority over the recorded 1973 deed.  The court reasoned:

> [Joseph] is not a subsequent good faith purchaser "whose conveyance [the 1975 deed was] first duly recorded" and thus is

not protected under South Dakota's recording statute [SDCL 43-28-17]. As the first-in-time purchaser, and the only grantee to record his interest, Dale's 1973 deed takes priority over the 1975 [unrecorded] deed.

## II.

[¶13.] "Under our familiar standard of review in summary judgment cases, we decide only whether genuine issues of material fact exist and whether the law was correctly applied.'" Zephier v. Catholic Diocese of Sioux Falls, 2008 SD 56, ¶6, 752 NW2d 658, 662 (citing Bordeaux v. Shannon County Sch., 2005 SD 117, ¶11, 707 NW2d 123, 126). Because it is dispositive, we only address the statute of limitations question.

[¶14.] There is no dispute that none of the statute of limitations relating to Spencers' causes of action is longer than twenty years.[2] There is also no dispute that twenty-two years expired between Spencers' knowledge acquired during the 1984 bankruptcy and the filing of this suit. Spencers argue, however, that their various causes of action did not accrue until Kandy actually discovered the 1975 deed in January of 2003. Spencers contend that because they were not aware of the 1975 deed until that time, they could not have brought an action to enforce the deed. They also contend that under the doctrines of fraudulent concealment and

---

2. In the proceedings below, the parties and the circuit court referenced SDCL 15-3-2 (allowing twenty years for actions based on entry upon real estate); SDCL 21-51-1 (providing actions upon a contract for the purchase or sale of real property must be commenced within fifteen years after the cause of action accrues); SDCL 43-28-22 (requiring notice of pendency of action before July 1, 2003); and SDCL 15-3-15 (vesting of title by possession and payment of taxes for ten years).

equitable estoppel, their causes of action were tolled until the 2003 discovery of the 1975 deed.

*Accrual of a Cause of Action*

[¶15.] Spencers first argue that their legal and equitable causes of action did not accrue until January of 2003, when Kandy discovered the 1975 deed.[3] Spencers contend that prior to this discovery, they had neither discovered, nor had actual or constructive notice of sufficient facts to bring their causes of action. The circuit court disagreed, concluding that Spencers' causes of action accrued no later than the 1984 bankruptcy proceedings, when they received actual notice that Dale was the sole titleholder and they had been deceived.

[¶16.] A cause of action accrues when the right to sue arises. *Haberer v. First Bank of South Dakota*, 429 NW2d 62, 68 (SD 1988). This means that "[i]n all events, a claim accrues and limitations become its course when a person 'has some notice of his cause of action, an awareness either that he has suffered an injury or that another person has committed a legal wrong which ultimately may result in harm to him.'" *Id.* (citation omitted). *See also* Wissink v. Van De Stroet, 1999 SD 92, ¶15, 598 NW2d 213, 216.

[¶17.] In this case, during the course of the 1984 bankruptcy proceedings, Spencers became aware that they had not been deeded any interest in the property and Dale was depriving them of their claimed interest. In fact, in their response to the Estate's statement of material facts, Spencers conceded that in 1984, they knew

---

3. Spencers also point out that in September of 2005, they first became aware that the property was deeded to Dale just two days after Dale had received the $9,250 down payment from Joseph.

they had not been deeded the property, and "knew they had been deceived." Their

response further conceded that they knew they had been defrauded regarding the

omission of their names from the deed. Therefore, by 1984, Spencers had actual

knowledge of the same alleged wrong and the same alleged injury for which they

first sought redress in 2006. Although Spencers argue that they could not have

brought an action to specifically enforce the 1975 deed until its discovery, they have

identified no legal reason why they could not have brought their declaratory and

equitable causes of action against Dale in 1984 to obtain the equivalent relief they

now seek. We conclude that Spencers' causes of action accrued in 1984, and that

absent tolling, their almost twenty-two year delay in commencing suit bars this

action.

*Fraudulent Concealment and Equitable Estoppel*

[¶18.] Spencers argue that even if their causes of action accrued in 1984, the

statutes of limitations were tolled under the doctrines of fraudulent concealment

and equitable estoppel. Under the doctrine of fraudulent concealment:

> In the absence of some trust or confidential relationship between
> the parties there must be some affirmative act or conduct on the
> part of the defendant designed to prevent, and which does
> prevent, the discovery of the cause of action . . . . Where . . . a
> trust or other confidential relationship does exist between the
> parties, silence on the part of one having the duty to disclose,
> constitutes fraudulent concealment in the absence of any
> affirmative act.

Glad v. Gunderson, Farrar, Aldrich, & DeMerssemen, 378 NW2d 680, 682 (SD

1985) (citing Hinkle v. Hargen, 76 SD 520, 525, 81 NW2d 888, 891 (1957)).

Spencers contend the statute of limitations was tolled under the doctrine of

fraudulent concealment because, "Dale fraudulently concealed the amended

contract for deed and 1975 deed from the knowledge of [Spencers]." Spencers

further contend that:

> Joe and Dale were tenants in common pursuant to the 1975 deed which was valid as between them. . . . [Therefore, a] fiduciary relationship existed to the extent that each co-tenant had a duty to sustain, or at least not to assail, the common interest or title.

From this, Spencers conclude that "there existed fraudulent concealment of the

cause of action by Dale until discovery of the deed in 2003." We disagree.

[¶19.]        There was no tolling under the doctrine of fraudulent concealment

because notwithstanding any concealment, by 1984 Spencers had actual knowledge

of the basic operative facts necessary to commence a cause of action to obtain their

claimed interest in the property. *See* One Star v. Sisters of St. Francis, Denver,

Colo., 2008 SD 55, ¶32, 752 NW2d 668, 681 (concluding, "[w]hen applicable,

[fraudulent concealment] tolls the statute of limitations *until* the cause of action is

discovered or might have been discovered by the exercise of diligence") (emphasis

added); *Zephier*, 2008 SD 56, ¶16, 752 NW2d at 666 (concluding, "[f]raudulent

concealment does not . . . toll the statute of limitations, no matter the nature of the

concealment if a plaintiff is already on notice of facts sufficient to give rise to a

claim").

[¶20.]        In this case, Spencers became aware in 1984 of facts sufficient to give

rise to their claims. Spencers were aware that Joseph had been excluded as a

record title owner of the property, that Dale was the sole owner of record, and that a

quiet title action would be necessary to claim their asserted interest. Further,

Spencers confronted Dale about the exclusion of Joseph's name from the deed, and

following Dale's refusal to discuss the matter, Spencers conceded that they felt "totally duped," "betrayed," "deceived," and "defrauded." Under those circumstances, Spencers were on notice of facts sufficient to give rise to their causes of action. Therefore, Dale could not, as a matter of law, have fraudulently concealed their causes of action. *See One Star*, 2008 SD 55, ¶35, 752 NW2d at 682.

[¶21.] Similarly, equitable estoppel does not apply because one element of that defense requires the concealment of the material facts, and Spencers "must have been without knowledge of the real facts." Heupel v. Imprimis Tech. Inc., 473 NW2d 464, 466 (SD 1991). As previously discussed, however, even though Spencers were not aware of the 1975 deed, by 1984, Spencers possessed actual knowledge of the fact that Joseph had been excluded as a titleholder to the property and they had been deceived and defrauded. Because Spencers had knowledge of sufficient material facts to bring a cause of action in 1984, the circuit court correctly concluded that the Estate was not equitably estopped from asserting the statutes of limitations as a defense in 2006.

*Constructive Trust*

[¶22.] Spencers finally argue that Joseph's interest in the 1975 deed should be subject to a constructive trust. SDCL 55-1-8 provides that "[o]ne who gains a thing by . . . the violation of a trust or other wrongful act, is, unless he has some other and better right thereto, an implied trust of the thing gathered for the benefit of the person who would otherwise have had it." Spencers have not, however, claimed that Mary Jo, the Estate, and the personal representative obtained the property in violation of a trust or through other wrongful act. On the contrary,

there is no dispute that Mary Jo obtained the property, without objection by the Spencers, in the 1994 probate of Dale's estate. Moreover, even if a constructive trust followed the property through the probate of Dale's estate, Spencers have not explained how their constructive trust cause of action escapes the bar of the statute of limitations.

[¶23.]     Affirmed.

[¶24.]     GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.