#29225-r-MES
**2021 S.D. 20**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE
ESTATE OF
NORMAN D. FRENCH, Deceased.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JON R. ERICKSON
Retired Judge

* * * *

CASEY N. BRIDGMAN of
Bridgman & Anderson Law Firm
Wessington Springs, South Dakota

Attorneys for petitioner
and appellant, Norman D.
French Estate.

DOUGLAS E. KLUDT of
Churchill, Manolis, Freeman,
   Kludt & Shelton, LLP
Huron, South Dakota

Attorneys for respondent
and appellee, Noreen French.

* * * *

CONSIDERED ON BRIEFS
AUGUST 24, 2020
OPINION FILED **03/10/21**

#29225

SALTER, Justice

[¶1.] The Estate of Norman D. French (the Estate) appeals the circuit court's decision to apply the doctrine of equitable tolling, allowing Noreen French to commence an action to enforce a contract for deed relating to the sale of two quarter sections of farmland. We reverse the circuit court's order applying equitable tolling and remand the case to the circuit court with instructions to discharge the contract for deed pursuant to SDCL 21-51-1.

## Background

[¶2.] Norman French farmed two quarters (320 acres) of land in Beadle County. In 1982, he entered into a contract for deed with Alan and Noreen French, his son and daughter-in-law, to sell the two quarters to them for $100,000. The terms of the contract required Alan and Noreen to pay $48,000 when the contract was signed and make annual principal and interest payments of $3,100 commencing on May 1, 1982, and continuing for twenty years. Assuming full payment, Norman would have been obligated to convey the land to Alan and Noreen after the anticipated completion date of May 1, 2002.

[¶3.] In 1982, Alan and Noreen moved onto the property and farmed the two quarters. Although they moved off their farmstead in 1996, they continued farming the two quarters. Norman passed away on March 11, 2010, and Alan passed away on June 9, 2014. Noreen and her three sons farmed the land until 2017. Alan and Noreen, and later just Noreen, paid the real estate taxes on the property each year, from 1982 to 2017.

-1-

[¶4.] In 2016, Noreen attempted to use the land as collateral for a loan and learned that Norman had never conveyed the two quarters. A title search confirmed that the property was still titled in Norman's name. Noreen approached Diane Breitag, one of Norman's daughters, requesting that she and her sister, Denise Hofeman, as Norman's successors in interest, help her clear the title. They were unwilling to do so and retained counsel.

[¶5.] Although there were no estate proceedings when Norman died six years earlier, Diane and Denise commenced the current estate action. Denise was appointed to serve as the personal administrator of her father's estate. Noreen also retained counsel, and the parties engaged in unsuccessful efforts to resolve their dispute beginning in late 2016. At issue was whether Alan and Noreen had, in fact, paid all of the money due under the contract for deed. Noreen's attorney expressed her position in a January 18, 2017 letter to counsel for the Estate:

> Noreen states that although she can't find proof of payment as it was over 30 years ago, she knows that payments were made to Norman by Al[an] whenever Norman needed money. She believes that the property had been paid in full and that discussions between herself and Al[an] indicated that Al[an] had spoken to Norman and Norman had stated that he just wanted Al[an] to have the property and that any debts owed had been taken care of through the money that had been given. So basically there was an Accord and Satisfaction.

[¶6.] The explanation was not satisfying to the Estate, whose attorney explained in an April 6, 2017 response, "We wanted to give Noreen the chance to prove any payments that have been made on this land; however, she comes forth with no payments . . . ." Citing the fact that the contract price for the land "was supposed to have been paid off in 2002[,]" counsel for the Estate argued that

Norman had several years before his death in 2010 to either gift the land to Alan and Noreen or convey the property under the terms of the contract. Yet, he did neither.

[¶7.] Although the negotiations between the parties were unfruitful, Noreen did not commence an action to enforce the contract for deed, at least not before the Estate acted. On August 17, 2018, over 16 years after the anticipated contract completion date, the Estate petitioned the court to discharge the contract for deed under the provisions of SDCL 21-51-1. The statute provides that a contract for the purchase of real property will be discharged if an action seeking performance is not commenced within 15 years after accrual of the cause of action or 15 years after the last payment was due. In instances where "there be no conveyance of record from the vendor or his successor in interest to the purchaser or his successor in interest, such contract or bond shall be conclusively presumed to have been terminated . . . ."[1] *Id.*

[¶8.] The circuit court held a hearing on the Estate's petition to discharge the contract for deed and ultimately decided to hold the petition in abeyance to facilitate additional discovery. These efforts confirmed certain peripheral facts, such as Norman had a good relationship with Alan, Norman retained mental clarity

---

1. Although SDCL 21-51-1 is not cited, Noreen's attorney wrote to her on December 22, 2016, and explained the essence of the Estate's statutory argument. Noreen's attorney wrote specifically that the Estate is "claiming you are in default on the contract and therefore that they may terminate the Contract for deed and you would forfeit any payments that you have made and you would have to give up the land." The letter is contained in the record and was submitted by Noreen's current attorney whose former law partner originally represented Noreen.

up until his death, and both Norman and Alan personally handled their financial affairs throughout their lifetimes. However, additional discovery did not answer the principal question of whether Alan and Noreen had paid the entire purchase price for the two quarters of land.

[¶9.] The Estate did acknowledge proof that $65,138.01 was paid by Alan and Noreen under the contract.[2] The Estate suggests that the $34,861.99 balance necessary to fulfill the contract was not paid.

[¶10.] For her part, Noreen continued to assert all of the payments were made under the contract, but she admitted in an affidavit that she "has no proof that all such payments were made." Beyond a brief initial affidavit and a subsequent affidavit to which Noreen attached certain Farm Service Agency (FSA) documents, the record contains no testimony from Noreen. The FSA documents contain references to the contract for deed, but they do not support the view that all the payments were made.

[¶11.] The FSA documents include Farm and Home Plans and actual statements of income and expenses dating back from 2003. The FSA Plans consistently show a long-term debt obligation for the "N. French CFD," or Norman French contract for deed. However, a significant balance due remained up to and through the anticipated May 1, 2002 completion of the contract for deed. The 2002 FSA Plan listed the remaining balance as $15,951, and the 2003 FSA Plan stated an increased balance of $16,900.

---

2.    The circuit court found that Norman had acknowledged receipt of $48,000 at the time the contract for deed was executed and that Diane and Denise admitted payment of an additional $17,138.01.

[¶12.]     In any event, the parties completed their discovery efforts over the course of approximately eleven months, and the circuit court conducted another hearing on the Estate's petition to terminate the contract for deed under SDCL 21-51-1. In its subsequent findings of fact and conclusions of law, the court found that Noreen "believes all of the remaining purchase price was paid under the Contract for Deed but has no direct written proof that it was." The court determined that the "statute of limitations set forth in SDCL 21-51-1 elapsed in this case."[3] Nevertheless, the court denied the Estate's petition and applied the doctrine of equitable tolling to extend the statute of limitations for an action Noreen had not filed. Although three years had elapsed since Noreen first engaged counsel, the court concluded that she should "be given a short amount of time . . . to file an action against the Estate to enforce the Contract for Deed."

[¶13.]     Noreen filed her complaint in a separate action on November 1, 2019. In it, she alleged, among other things, that "Noreen . . . and . . . Alan have satisfied their obligations under the Contract for Deed" and requested that the court order the Estate to deliver a deed conveying legal title to the two quarters of farmland.

[¶14.]     The Estate raises several issues for our review. We consolidate and restate the principal issue as: Whether the circuit court erred when it failed to discharge the contract for deed and instead applied the doctrine of equitable tolling to allow Noreen to file suit after the 15-year limitation period had expired.

---

3.     The circuit court did not receive any evidence at the hearing and apparently relied upon affidavits and information filed with the clerk for its factual findings. Though this method of developing a factual record does not allow proffered information to be tested by the rules of evidence or the adversarial process, neither party has objected to its use here.

## Analysis

[¶15.] The text of SDCL 21-51-1 provides in relevant part:

> An action upon a contract . . . for the purchase or sale of real property . . . must be commenced within fifteen years after the cause of action shall have accrued, or within fifteen years after the last payment thereunder shall have become due and payable, and, if not so commenced, such action shall be forever barred, and such contract . . . shall become null and void and if there be no conveyance of record . . . , such contract . . . shall be conclusively presumed to have been terminated, and such contract or bond shall cease to be notice of any rights of the purchaser and said period of fifteen years shall not be extended by . . . partial payment.

[¶16.] By its express terms[4], the statute applies to contracts for the purchase of real property and provides two potential dates for the commencement of the 15-year limitation period—either the date on which an action to enforce the contract accrued[5] or the date on which the last payment was due. However, SDCL 21-51-1 does more than simply provide for a limitation period.

[¶17.] The provisions of SDCL 21-51-1 also seek to clarify the status of real property that was the subject of a contract for purchase in instances where the contract remains unfinished or unenforced at the end of the applicable 15-year period. In the event there has been no action and the seller has not conveyed a deed to the purchaser within the 15-year period, the clear and unambiguous terms of the

---

4. "Statutory interpretation presents a question of law reviewable de novo." *Zoss v. Schaefers*, 1999 S.D. 105, ¶ 6, 598 N.W.2d 550, 552 (citation omitted).

5. "A cause of action accrues when the right to sue arises[,] . . . [which occurs] . . . when a person has some notice of his cause of action, an awareness either that he has suffered an injury or that another person has committed a legal wrong which ultimately may result in harm to him." *Spencer v. Estate of Spencer*, 2008 S.D. 129, ¶ 16, 759 N.W.2d 539, 544 (citations and internal quotation marks omitted).

statute provide that: (1) any action to enforce the contract is "forever barred[;]" (2) the contract becomes null and void; and (3) the contract "shall be conclusively presumed to have been terminated[.]"  If not completely self-executing, these provisions are close.  To invoke the consequential terms of SDCL 21-51-1 and discharge the contract, a seller need only present proof to the circuit court that the "conditions prescribed by § 21-51-1 exist."  SDCL 21-51-2; *see also* SDCL 21-51-9 (stating that "[t]he court may render judgment upon the record and proof required by this chapter canceling and discharging the instrument").[6]

[¶18.]        Here, the parties and the circuit court operated under the belief that the correct date for commencing the 15-year period was May 1, 2002, the date on which the last payment was due under the contract.  The court specifically concluded that "[t]he statute of limitations set forth in SDCL 21-51-1 elapsed in this case."  Noreen has not challenged that determination on appeal and has not argued that she had a cause of action which accrued after May 1, 2002.  Nor has she objected to the circuit court's determinations that Norman did not convey a deed to the farmland and that the 15-year period expired without commencement of an action to enforce that contract.  In fact, Noreen expressly stated in her brief to this

---

6.     Before the circuit court, Noreen argued that the court could exercise its discretion and refuse to discharge the contract given the "may" text of SDCL 21-51-9.  Noreen has not offered the same argument on appeal, and in fact, she has not responded to the Estate's claim that the court erred by not discharging the contract under the provisions of SDCL chapter 21-51.  Rather, Noreen has confined her arguments on appeal to the assertion that the court acted within its discretion by applying the doctrine of equitable tolling.

Court that "the facts in this case are not disputed" and admitted that "the statute of limitations in SDCL 21-51-1 had expired."

[¶19.] Set against this backdrop, the circuit court's statutory course was clear. It is undisputed that the "conditions prescribed by SDCL 21-51-1" were present—the expiration of the 15-year period without commencement of an action and the absence of a deed conveying the real estate. *See* SDCL 21-51-2. The Estate's action seeking discharge was specifically authorized by the text of SDCL 21-51-1, and the circuit court should have applied the statutes and discharged the contract for deed. The court's contrary decision to apply the doctrine of equitable tolling to avoid what it determined to be an inequitable result is not sustainable.

[¶20.] At the outset, the availability of equitable tolling within our common law is not a forgone conclusion. We have not officially adopted the equitable tolling doctrine for civil cases, *see Anson v. Star Brite Inn Motel*, 2010 S.D. 73, ¶ 15 n.2, 788 N.W.2d 822, 825 n.2, and as Justice Konenkamp has noted, there are serious questions about whether it could be incorporated into our decisional law, *see id.* ¶¶ 36-40 (Konenkamp, J., concurring).

[¶21.] Noreen's principal argument on appeal is premised upon the claim that we limited any reluctance to adopt the doctrine of equitable tolling to statutes of repose in *Pitt-Hart v. Sanford USD Medical Center*, 2016 S.D. 33, 878 N.W.2d 406. In *Pitt-Hart*, we explained the distinctions between statutes of repose and statutes of limitation, noting, among other things, that concepts of estoppel and tolling are "inapplicable to a period of repose[,]" but "tolling a period of limitation or estopping a party from asserting it as a defense may be proper[.]" 2016 S.D. 33, ¶ 21, 878

N.W.2d at 414 (emphasis omitted). However, these general statements were not a definitive adoption of the doctrine of equitable tolling for statutes of limitations and, set in context, were offered simply to mark the critical differences in the legislative purposes underlying limitation and repose periods. *See id.* Regardless, the question of whether SDCL 21-51-1 contains a statute of limitation or a repose period is purely academic here[7] because even if equitable tolling was an authorized remedy, Noreen could not avail herself of it.

[¶22.]  "The threshold for consideration of equitable tolling is inequitable circumstances not caused by the plaintiff that prevent the plaintiff from timely filing." *Anson*, 2010 S.D. 73, ¶ 16, 788 N.W.2d at 826. Noreen made no showing before the circuit court that she was prevented from commencing an action for 15 years after the last payment was due on May 1, 2002. Although she asserts that Alan managed the family's financial affairs, Noreen has not established how this would have prevented the commencement of an action to enforce the contract for deed. If Noreen and Alan had, in fact, paid the entire purchase price for the land, they could have brought the action prior to Alan's 2014 death, or Noreen could have

---

7.  The fact that the 15-year limitation period that applies here commenced on the date the last payment was due without regard to accrual of a claim is more consistent with a statute of repose than a statute of limitation. *See In re Elizabeth A. Briggs Revocable Living Tr.*, 2017 S.D. 40, ¶ 9 n.5, 898 N.W.2d 465, 469 n.5 ("A statute of repose bars all actions after a specified period of time has run from the occurrence of some event other than the occurrence of an injury that gives rise to a cause of action." (quoting *Peterson ex rel. Peterson v. Burns*, 2001 S.D. 126, ¶ 41, 635 N.W.2d 556, 570)). Of course, SDCL 21-51-1 also includes an alternate 15-year limitation period which runs from the date of accrual without any textual indication as to which period takes precedence. However, we leave for another day the question of whether SDCL 21-51-1 provides for a statute of limitation or repose, or both.

commenced the action later in her own name during the roughly three years that remained on the limitation period. In fact, the record indicates that Noreen had engaged counsel in November of 2016, over six months prior to the expiration of the 15-year period.

[¶23.]    Finally, our reading of SDCL 21-51-1 leads us to conclude that the Legislature contemplated precisely the type of circumstances the circuit court found to be unacceptably harsh. For instance, the commencement of the 15-year limitation period need not be connected to accrual, but could instead begin to run on the date of the last scheduled payment. This means, among other things, that the parties inattention to the contract's terms or enforcement will not forestall the running of the period. The provisions of SDCL 21-51-1 also specifically account for the absence of a conveyance and do not distinguish between instances where the seller simply overlooked the obligation to convey a deed from cases where the buyer failed to make all of the payments. In drafting the statute as it did, the Legislature allowed for a lengthy period within which parties to a contract for deed could act to enforce their rights, but in the absence of such an effort, the Legislature sought to provide certainty and marketability for the real property whose status might otherwise be unclear.[8]

[¶24.]    We reverse the circuit court's order applying the doctrine of equitable tolling and remand this case with instructions to discharge the contract pursuant to SDCL 21-51-1.

---

8.    Our disposition here results only in the discharge of the contract for deed. There is no other question before us, and we express no opinion as to any other potential remedy concerning the circumstances of this case.

[¶25.] JENSEN, Chief Justice, and KERN and DEVANEY, Justices, and GILBERTSON, Retired Chief Justice, concur.

[¶26.] MYREN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.