#30500-a-MES
**2024 S.D. 69**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MARY A. JOHNSON,                                    Plaintiff and Appellee,

v.

GREGORY M. JOHNSON,                                 Defendant and Appellant.

and

ROBERT JOHNSON, CAROL A.
LINDER, and BARBARA LAFEVER,                        Defendants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOSHUA HENDRICKSON
Judge

* * * *

ROBERT J. GALBRAITH of
Nooney & Solay, LLP
Rapid City, South Dakota          Attorneys for defendant and
                                  appellant.

* * * *

CONSIDERED ON BRIEFS
JUNE 4, 2024
OPINION FILED **11/20/24**

* * * *

HEATHER M. LAMMERS BOGARD
PHILLIP STILES
GARRETT J. KEEGAN of
Costello, Porter, Hill, Heisterkamp,
    Bushnell & Carpenter, LLP
Rapid City, South Dakota

                 Attorneys for plaintiff and
                 appellee.

#30500

SALTER, Justice

[¶1.]     Mary Johnson entered into an oral agreement with her parents under which they conveyed a parcel of real property to her so that she could obtain financing to construct a small home for them on the property.  In exchange, Mary and her family were able to live in a larger home previously occupied by her parents on a separate parcel.  Once she satisfied the mortgage, Mary was obligated under the agreement to transfer the property to herself and her siblings in equal shares in accordance with her parents' wishes.  Despite satisfying the mortgage, Mary advised her siblings in 2008 that she would not convey the land to them.

[¶2.]     In this action, Mary's brother, Greg Johnson, sought to enforce the oral agreement to convey the property and reformation of the deed from his parents to Mary.  The circuit court granted Mary's motion for summary judgment, determining Greg's breach of contract claim was barred by the statute of limitations and that he was not entitled to reformation because he was unable to establish that the deed failed to reflect the parties' intent.  Greg appeals, and we affirm.

**Factual and Procedural Background**

[¶3.]     Carl and Pearl Johnson owned two pieces of property in the Black Hills area near Hill City.  The parcels are former mining claims and are known as the 7.49-acre Spaniard Lode and the Gertie Lode, which is 10 acres.  Carl and Pearl lived in a large house located on the Spaniard Lode; it had become difficult for Carl to maintain due to his deteriorating health in the mid-1990s.  Still, he did not want to move into a town or city.

-1-

[¶4.]     Carl and Pearl ultimately developed a plan that would allow them to remain on the property through an agreement with Mary, who was living with her parents at the Spaniard Lode home.  Under the agreement, Carl and Pearl would deed Mary the Gertie Lode for the purpose of obtaining financing to build a small home on that property, and, in exchange, Mary and her family could live rent-free in the larger Spaniard Lode home.  The agreement also contemplated that Mary would transfer the Gertie Lode equally to her four siblings and herself once she satisfied the mortgage on the Gertie Lode home.

[¶5.]     Pursuant to the terms of what the parties agree was an oral contract, Carl and Pearl transferred the Gertie Lode to Mary in fee simple in 1995 through a warranty deed.  Mary, in turn, obtained a loan in 1996 and constructed a home on the Gertie Lode where her parents then lived.  Carl only lived there for a little over a year before he passed away.  Pearl continued to live in the home for approximately a year and a half longer before she remarried and moved to Rapid City.

[¶6.]     Carl and Pearl were keenly aware that the agreement with Mary could have been reduced to writing but was not.  Instead, it appears Carl and Pearl believed that the agreement would be honored if they made their intentions clear to their children.  And they did so at various times, including at the outset of the agreement when they conveyed the Gertie Lode to Mary in 1995, telling their children of their plan for the Gertie Lode during a family gathering.

[¶7.]     In 2005, Pearl confirmed that the oral agreement reflected her and Carl's shared intent in a letter:

> Our intention amongst the three of us was to sign over the Gertie Lode to Mary so the building could begin. . . . At a later time the acreage would be divided properly with a surveyor. . . . The transactions had nothing to do with a favorite son or daughter, it was done for proper living conditions for dad and the time he had left. I know action needs to be taken with a lawyer to secure the properties before something intervenes and may be lost to a regrettable act or transaction.

[¶8.] And, again, in a 2009 letter, Pearl wrote: "This is a note to clarify the intent of how the Gertie Lode was to be divided. The original intent is still the same and has not changed. The property is to be divided equally between [the five children]." She and Carl had, in fact, done this for the Spaniard Lode in 1996, transferring ownership by quitclaim deed to their children to share equally as tenants in common and reserving a life estate for themselves.

[¶9.] Mary paid off the original loan to build the small house on the Gertie Lode in 2006, and the satisfaction was recorded with the Pennington County Register of Deeds. But before that, in 2004, Mary acted on her own to obtain a home equity line of credit secured by a mortgage on the Gertie Lode to finance some repairs on the Spaniard Lode home. The line of credit mortgage remains as an encumbrance on the Gertie Lode property.

[¶10.] Over the years, Mary expressed her belief that she should be compensated for taking care of the Gertie Lode and the Spaniard Lode. And in 2008, Mary met with her mother, Pearl, her brother, Greg, and a sister to discuss the division of both the Spaniard Lode and the Gertie Lode and possible compensation to Mary. Mary indicated during the meeting that she did not intend to carry out her obligations under the oral agreement and, instead, was going to

keep the Gertie Lode for herself. She confirmed this in a September 12, 2008 letter

to her siblings:

> *I know it was not the "INTENTION" of the folks for [me] to have
> all of the 10 acres*, but I feel that if it would have been any
> different none of us would have this property.
>
> By November 1st I will be moved into the little house . . . . *I will
> be keeping the 10 acres in one piece*. . . . I feel there should be
> some buy out from me to you but that is yet to be
> determined. . . . You guys need to come up with a plan of
> action[.]

(Emphasis added.)

[¶11.] In September 2018, Mary filed suit to partition the separate Spaniard

Lode parcel that Carl and Pearl had previously conveyed to their children. Greg

filed an answer, counterclaim, and crossclaim relating to the Gertie Lode property.[1]

Greg alleged the 1995 warranty deed conveying the Gertie Lode to Mary should be

reformed and that Mary breached the oral agreement made with their parents

which, Greg claimed, could be enforced through specific performance and partition

of the Gertie Lode or, in the alternative, an award of damages.[2]

[¶12.] Mary filed for summary judgment on Greg's claims, which the circuit

court granted, concluding that the breach of contract claim was time-barred because

---

1.  Greg's claims are characterized as a counterclaim against Mary and
    crossclaims against the remaining siblings.

2.  Greg claims he is entitled to enforce the oral agreement because he is a third-
    party beneficiary of the contract between the parties' parents and Mary. *See*
    SDCL 53-2-6 ("A contract made expressly for the benefit of a third person
    may be enforced by him at any time before the parties thereto rescind it.").
    Mary did allege a lack of standing as an affirmative defense in her reply to
    Greg's breach of contract claim, but she has not developed that theory further
    beyond the pleadings.

it was commenced after the expiration of the six-year statute of limitation. The court listed alternate dates on which Greg's action would have accrued, but none were within six years of Greg's 2018 claims. For instance, the court determined Greg had constructive notice of Mary's intent to breach the oral agreement when she satisfied the mortgage in 2006 because the satisfaction had been filed with the register of deeds. The court also concluded the home equity line of credit, again imputed by record notice, constituted "an act of defiance" in contravention of the oral agreement. Finally, the court determined that Greg and the other siblings had actual notice of Mary's intent to breach the agreement when she sent the letter to her siblings in 2008 telling them she was not going to convey the Gertie Lode to them.

[¶13.]     As to Greg's reformation claim, the circuit court determined there was no mistake or fraud to serve as a basis for relief. Rather, the court concluded the 1995 warranty deed to Mary accurately reflected the intent of the parties. And because Greg was not an owner of the Gertie Lode, the court granted summary judgment on Greg's partition claim.[3]

## Analysis

### *Summary judgment*

[¶14.]     "We review a circuit court's entry of summary judgment under the de novo standard of review." *Uhre Realty Corp. v. Tronnes*, 2024 S.D. 10, ¶ 41, 3

---

3.     Greg does not challenge the circuit court's grant of summary judgment on his partition claim which we view as peripheral to the principal issue of timeliness. The parties also stipulated to dismissal of Mary's partition action for the Spaniard Lode property, which resolved the remaining claims in this action.

N.W.3d 427, 438 (citation omitted).  Our review requires us to determine "whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law."  *Id.* (citing *Burgi v. E. Winds Ct., Inc.*, 2022 S.D. 6, ¶ 15, 969 N.W.2d 919, 923).  "It is well-settled that '[w]e view the evidence most favorably to the nonmoving party and resolve reasonable doubts against the moving party.'"  *Id.* (citation omitted).

### Timeliness of the breach of contract claim

[¶15.]    A breach of contract action is subject to a six-year statute of limitations, which begins when the cause of action accrues.  SDCL 15-2-13.  "A cause of action accrues when the right to sue arises."  *Spencer v. Estate of Spencer*, 2008 S.D. 129, ¶ 16, 759 N.W.2d 539, 544 (citation omitted).  We have held, in this regard, that "a claim accrues and limitations become its course when a person 'has some notice of his cause of action, an awareness either that he has suffered an injury or that another person has committed a legal wrong which ultimately may result in harm to him.'"  *Id.* (quoting *Haberer v. First Bank of S.D.*, 429 N.W.2d 62, 68 (S.D. 1988)).

[¶16.]    The date on which a claim accrues is a question of fact.  *E. Side Lutheran Church of Sioux Falls v. NEXT, Inc.*, 2014 S.D. 59, ¶ 11, 852 N.W.2d 434, 438.  However, where there is no dispute as to accrual and the statute of limitations period has expired, summary judgment is appropriate.  *Id.* at 438–39 (citation omitted); *see also In re Estate of Cullum*, 2015 S.D. 85, 871 N.W.2d 655 (granting summary judgment where there was no genuine issue of material fact regarding accrual); *One Star v. Sisters of St. Francis*, 2008 S.D. 55, 752 N.W.2d 668 (same).

[¶17.] Here, Greg's breach of contract cause of action accrued when he received Mary's 2008 letter. In that letter, Mary unequivocally expressed her intent to breach the oral agreement she had made with Carl and Pearl to convey the land to her siblings. She acknowledged her parents' "intention" that she would *not* keep the entire Gertie Lode, but, nevertheless, declared, "I will be keeping the 10 acres in one piece." It was at this clarion moment that Greg unquestionably "ha[d] some notice of his cause of action, an awareness either that he has suffered an injury or that another person has committed a legal wrong which ultimately may result in harm to him." *Spencer*, 2008 S.D. 129, ¶ 16, 759 N.W.2d at 544 (quoting *Haberer*, 429 N.W.2d at 68).[4]

[¶18.] Using the 2008 accrual date, Greg's contract claim is time-barred by the applicable six-year statute of limitations. It is, therefore, unnecessary to consider whether the circuit court erred when it also determined an earlier date for accrual.

[¶19.] Greg argues, however, that the breach of contract claim did not accrue as a result of Mary's 2008 letter because, in it, Mary suggested that "there should be some buy out from me to you but that is yet to be determined."[5] But there is no evidence of any discussion or agreement, at the time the oral contract was made,

---

4. The parties have not suggested that the oral contract is governed by the statute of frauds, and we make no determination in this regard. *See* SDCL 53-8-2 (listing contracts required to be in writing).

5. Greg also asserts there were conversations about splitting the Spaniard Lode and the Gertie Lode among the siblings equally to suggest accrual did not begin with Mary's 2008 letter. However, our review of the record reveals these conversations occurred prior to Mary's 2008 letter.

giving Mary an opportunity to buy out her siblings when she paid off the loan for the home on the property. Instead, it is undisputed that Mary was contractually obligated by the oral agreement with her parents to convey the ten-acre Gertie Lode tract equally to her siblings after she satisfied the mortgage for the small home on the property. Whether Mary's obligation to convey arose immediately after the mortgage was satisfied, or at a later time, is not consequential. Once Mary stated she was "keeping the 10 acres in one piece[,]" Greg had notice he had suffered an injury or that Mary had committed a legal wrong which may result in harm to him.[6]

[¶20.] Further, Mary's reference to a potential buy-out, even if it was an acknowledgement of contract damages did not impact accrual. Rather, these damages would be part and parcel of the accrued contract claim.[7] It is also not

---

6. As Greg acknowledged, there was no time period or deadline by which Mary was supposed to convey the Gertie Lode to her siblings; the oral agreement only provided that her obligation would follow satisfaction of the loan she obtained to build the small house. However, even if questions of fact exist as to when Mary's obligation to convey Gerdie Lode to her siblings arose, they are not material because Mary's unmistakable expression in the 2008 letter that she would not perform her contractual duty would constitute an anticipatory breach of the oral agreement. *See Detmers v. Costner*, 2023 S.D. 40, ¶ 32, 994 N.W.2d 445, 457 (noting that anticipatorily breaching a contract is the same as a breach where a party unequivocally indicates that he or she will not perform).

7. Greg does not argue that the statute of limitations should be equitably tolled or that Mary should be estopped from asserting it as a defense based upon an offer to pay damages. *See In re Estate of French*, 2021 S.D. 20, ¶ 20, 956 N.W.2d 806, 811 (citing *Anson v. Star Brite Inn Motel*, 2010 S.D. 73, ¶ 15 n.2, 788 N.W.2d 822, 825 n.2) (noting we "have not officially adopted the equitable tolling doctrine for civil cases"); *see also E. Side Lutheran Church of Sioux Falls*, 2014 S.D. 59, ¶ 17, 852 N.W.2d at 441 (listing four elements to be

(continued . . .)

significant that a reference to a "buy out" was general and not reduced to a sum certain. The test for accrual is not that rigid; it requires only an awareness of an injury or a legal wrong "which ultimately may result in harm to him." *Spencer*, 2008 S.D. 129, ¶ 16, 759 N.W.2d at 544 (quoting *Haberer*, 429 N.W.2d at 68).

[¶21.] Finally, Greg's claim that he and his siblings cannot have a "complete and present cause of action" until Mary has removed the home equity loan mortgage is unsustainable. Under the contract, the parties agree that the transfer of the Gertie Lode was conditioned only upon the satisfaction of the principal mortgage. Satisfying a different loan, which was not contemplated by the agreement, did not impact, excuse, or suspend Mary's obligation to convey the land to her siblings. As a result, accrual for Greg's breach of contract claim is unaffected by the fact that the Gertie Lode may now be encumbered by a mortgage not envisioned by the original agreement.[8]

[¶22.] We hold that Greg's breach of contract claim accrued when he received Mary's 2008 letter, advising him that she was breaching the oral agreement with their parents to transfer the land to her siblings. Greg has failed to raise any issue of genuine material fact that accrual did not begin with Mary's 2008 letter. Instead, his arguments appear focused on the object of the contract—the transfer of the property in equal shares upon satisfaction of the mortgage—and, ultimately, its

---

(. . . continued)
proven by clear and convincing evidence required for application of equitable estoppel).

8. Greg has not argued that the home equity line of credit mortgage is, itself, a breach of the oral agreement, only that it forestalls accrual of his claim to enforce the agreement between Mary and their parents.

breach. Therefore, the six-year statute of limitations period expired in September 2014. Since Greg did not bring his claim until October 2018, it is barred by the statute of limitations, and Mary is entitled to summary judgment.

***Reformation of deed claim***

[¶23.] "When an error or mistake has been made, equity allows a court to reform a written instrument to reflect the real intention of the parties." *Tripp v. F & K Assam Fam., LLC*, 2008 S.D. 78, ¶ 21, 755 N.W.2d 106, 112 (citations omitted). Here, though, there is nothing to reform, as the circuit court correctly determined. The agreement Carl and Pearl made with Mary is an oral one that was never reduced to writing. So, there is no *contract* that could be reformed. *See* SDCL 21-11-1 (authorizing reformation of "a written contract"). And the warranty deed, insofar as it goes, appears to be accurate. Carl and Pearl intended the deed to do exactly what it did—transfer the Gertie Lode to Mary without restriction so that she could obtain financing and build a home on the Gertie Lode, which was the impetus for the agreement.

[¶24.] Beyond this, it is not clear how reforming the warranty deed would allow Greg to enforce the time-barred contract claim. Reforming the deed to somehow reflect the oral agreement could only ever be used to clarify the parties' intent, but that intent is undisputed and needs no clarification. Indeed, the principal question in this appeal is not related to the terms of the oral agreement or whether there has been a mistake or fraud. Rather the issue is whether the only remaining executory term—Mary conveying the Gertie Lode to her siblings when she had satisfied the loan to build the small house—can be enforced.

[¶25.] Under the circumstances, the circuit court correctly granted Mary's summary judgment motion on Greg's reformation claim. For this reason, we need not consider whether the reformation claim was timely commenced within what the parties have identified as a ten-year statute of limitations period for reformation actions. *See Burke v. Bubbers*, 342 N.W.2d 18, 20 (S.D. 1984) (applying the ten-year statute of limitations to action for reformation of a deed).

## Conclusion

[¶26.] Greg has failed to establish a genuine issue of material fact exists whether the 2008 letter constitutes the date of accrual. Because the six-year statute of limitations period expired in 2014, Greg's breach of contract action is barred, and summary judgment is proper. Greg has also failed to establish the deed does not reflect the intent of the parties, so summary judgment on his reformation claim is likewise appropriate. We affirm.

[¶27.] JENSEN, Chief Justice, and MYREN, Justice, concur.

[¶28.] KERN and DEVANEY, Justices, concur in part and dissent in part.

DEVANEY, Justice (concurring in part and dissenting in part).

[¶29.] I agree with the majority opinion's determination that the circuit court properly granted summary judgment dismissing Greg's reformation claim. However, because a jury could reasonably infer from the evidence that Mary did not indicate her intent to breach the oral agreement she made with her parents until the present lawsuit, I respectfully dissent from the majority opinion's determination that summary judgment was properly granted on the basis that the statute of

limitations expired prior to when Greg asserted his breach of contract claim against Mary.

[¶30.]    The majority opinion affirms summary judgment dismissing Greg's breach of contract claim after characterizing the evidence in a light least favorable to Greg, a practice proscribed by our rules governing summary judgment review. *See Uhre Realty Corp. v. Tronnes*, 2024 S.D. 10, ¶ 41, 3 N.W.3d 427, 438.  For example, the majority opinion states that Mary, in her September 2008 letter, "*unequivocally* expressed her intent to breach the oral agreement she had made with Carl and Pearl to convey the land to her siblings."  (Emphasis added.)  But Mary did not say she intended to keep the Gertie Lode to herself, end of story, or that she did not intend to honor the oral agreement she made with her parents. Rather, her statements and the inferences from them could be reasonably construed to express her desire to remain the sole owner of the Gertie Lode, with the suggestion that this matter, including her idea that she could buy them out of their rightful interest in the property, would be discussed further.  In fact, Greg testified in his deposition that Mary did not at any time prior to the litigation tell any of the siblings that she intended to keep the Gertie Lode to the exclusion of her siblings' interest in the property.

[¶31.]    Importantly, and as the majority opinion notes, "there was no time period or deadline by which Mary was supposed to convey the Gertie Lode to her siblings; the oral agreement only provided that her obligation would follow

satisfaction of the loan she obtained to build the small house."[9]  Therefore, her statement that she will be keeping the Gertie Lode in one piece must be considered in conjunction with the subsequent statement that she will buy her siblings out of their interests.  In concluding otherwise, the majority opinion dismisses Mary's reference to buying her siblings out of their interest in the Gertie Lode, suggesting it was an acknowledgement that she might owe contract damages.  But this reading violates the rule requiring us to view the evidence in a light most favorable to the nonmoving party because Mary's letter neither contains language suggesting she was offering to pay *money damages* nor that the offer was an acknowledgment of a purported *breach* of her agreement with her parents.

[¶32.]     Mary's 2008 letter is two-and-a-half pages, single spaced, and recounts issues between the siblings both related and unrelated to the Gertie Lode.  She notes that after two siblings left home, she, at nine or ten years old, was the one to care for her parents' needs.  She further claimed that she has been the only sibling there to take care of the Spaniard and Gertie Lodes.  She also told her siblings that if it were not for her and their mother stopping their father from selling the property each time he tried, the siblings would not be in the situation they are, i.e., discussing what to do with the property.  She told her siblings she wanted to be compensated for her time and energy spent on the properties, noting that some

---

9.     The majority opinion's acknowledgement that there was no time period or deadline for the transfer suggests that the majority opinion disagrees with the circuit court's determination that Greg had constructive notice of Mary's breach on June 29, 2006, when Mary recorded her satisfaction of the mortgage but did not transfer the Gertie Lode to the siblings.  In the event this is the majority opinion's view, I agree.

siblings do not feel she should be compensated. She thereafter related the statements quoted in isolation by the majority opinion—that she is aware her parents did not intend for her to have all ten acres, that she will be keeping the ten acres in one piece, and that she feels she should buy out her siblings (a matter to be determined later).

[¶33.] Mary's above statements must also be considered in light of other record evidence. Of particular note, and further supporting that Mary did not, in her 2008 letter, indicate an intent to breach the agreement with her parents, there are pertinent statements in an email her sister, Carol, wrote to her attorney on October 10, 2008, *after* Mary sent her letter. In this email, Carol noted some history regarding her parents' "2 tracts of land, to be totaling 17 acres"; "Gertie-10 acres and Spaniard-7 acres." In that regard, she explained that although her parents deeded the Gertie Lode to Mary to allow her to use the land to obtain a mortgage, "at a later date the entire 17 acres would be divided up 5 equal ways." She then related that the siblings had a meeting and a few phone conversations about how to "amicably/equally divide the property." She further noted that "[t]here have been different proposals, from us to her, on how best to do this," with "a few giving her SOME financial compensation for her perceived need for compensation." After relating Mary's "plan" to "take control of the 10 acres and have 1/5 interest in the other 7 acres," Carol advised her attorney that the "original intent still stands per our mothers [sic] stated wishes *this week* that the *17 acres be divided 5 equal ways*. We don't see it as 10 acres and 7 but the full 17 as our parents intended." (Emphasis added.)

[¶34.]     Mary's letter and Carol's email, viewed in a light most favorable to Greg, reflects that a fair division of compensation for the entire 17 acres, which includes the Gertie Lode, was open for continuing discussion, discussions that may very well result in the Gertie Lode being divided in accord with Mary's oral agreement with her parents.  In fact, but not noted by the majority opinion, when Mary was asked during her deposition "[w]hen did you first tell your siblings that you were going to keep Gertie as one piece of property and you did not owe them anything for Gertie[,]" she replied, "Well, 2008 I said it had been yet to be determined.  *I don't know*."  (Emphasis added.)  She also replied, "not off the top of [her] head," in response to the question whether she can "specifically recall any time before this litigation where she told" her siblings that the Gertie Lode belongs to her and she owes them nothing.

[¶35.]     It is well settled that "[a] cause of action accrues when the right to sue arises."  *Spencer v. Estate of Spencer*, 2008 S.D. 129, ¶ 16, 759 N.W.2d 539, 544.  Therefore, "a claim accrues and limitations become its course when a person 'has some notice of his cause of action, an awareness either that he has suffered an injury or that another person has committed a legal wrong which ultimately may result in harm to him.'"  *Id.* (citation omitted).  While the test for accrual might not be rigid, there must exist a right to sue at the time a court deems the person to be on notice of the cause of action.

[¶36.]     Here, it cannot be said on this record that Greg had a breach of contract claim against Mary after he received her 2008 letter.  While Mary did not divide the Gertie Lode among her siblings after this letter, she was not, per the

terms of the oral agreement, obligated to take such action by a certain date.[10]

Moreover, although she indicated her desire to keep the Gertie Lode in one piece,

she acknowledged that her parents did not intend her to keep all ten acres, so she

invited further discussions, discussions she hoped would also result in her

remaining the sole owner of the Gertie Lode and being compensated for her time

and energy over the previous 20 years caring for both properties. Notably, both

before the 2008 letter and after, Mary lived on and cared for the property without

involvement from her siblings. Therefore, the fact she continued to do so after the

2008 letter cannot be construed as notice to Greg or the siblings that Mary intended

to breach her agreement with her parents.

[¶37.] It is not often repeated, but this case warrants the reminder that

"'summary judgment is an extreme remedy and should be awarded only when the

truth is clear[;] and reasonable doubts touching upon the existence of a genuine

issue of material fact should be resolved against the movant.'" *Keystone Plaza*

*Condo. Ass'n v. Eastep*, 2004 S.D. 28, ¶ 15, 676 N.W.2d 842, 847 (alteration in

original) (quoting *St. Onge Livestock Co., Ltd. v. Curtis*, 2002 S.D. 102, ¶ 25, 650

N.W.2d 537, 544). Along the same lines we have said that "[s]ummary judgment

'should not be granted unless the moving party has established the right to a

judgment with such clarity as to leave no room for controversy.'" *Hanson v. Big*

---

10. In my view, Mary obtaining a home equity loan mortgage on the Gertie Lode is immaterial to the question whether Greg's cause of action against Mary accrued. Mary has now, in this lawsuit, unambiguously expressed her intent to breach the oral agreement requiring her to transfer the Gertie Lode to her and her siblings in equal shares, and Greg has timely asserted a claim against Mary to remedy that legal wrong.

*Stone Therapies, Inc.*, 2018 S.D. 60, ¶ 38, 916 N.W.2d 151, 161 (quoting *Richards v. Lenz*, 539 N.W.2d 80, 83 (S.D. 1995)).  In my view, summary judgment should not have been granted here because the truth—whether Mary expressed an intent to breach the agreement prior to this lawsuit—is not clear.  Also, the evidence relating to what these siblings, who were trying to honor their parents' wishes but also negotiate their own interests, knew or did not know is rapt with controversy.  Therefore, I would reverse and remand the circuit court's decision granting Mary summary judgment on Greg's breach of contract claim.

[¶38.]        KERN, Justice, joins this writing.